503 S.E.2d 840

**Jeffrey McDANIEL, Plaintiff Below, Appellant,**

v.

**Irene Adair KLEISS, Defendant Below, Appellee,**

**Aetna, The Standard Fire Insurance Company, Intervenor Below, Appellee.**

No. 24527.

Supreme Court of Appeals of West Virginia.

Submitted March 18, 1998.

Decided June 12, 1998.

D. Michael Burke, Lawrence M. Schultz, Burke & Schultz, Martinsburg, for Appellant.

Michael D. Lorensen, Bowles Rice McDavid Graff & Love, P.L.L.C., Martinsburg, for Appellee, Irene Adair Kleiss.

Paul B. Weiss, Martin & Seibert, L.C., Martinsburg, for Appellee, Aetna, The Standard Fire Insurance Company.

DAVIS, Chief Justice:

The plaintiff in this case, Jeffrey McDaniel, appeals two separate orders entered by the Circuit Court of Berkeley County on March 25, 1997, in a personal injury action. The first order denied McDaniel's motion to alter or amend a prior order of the court that had distributed, to McDaniel's underinsured motorist insurance carrier, funds that the defendant had deposited with the circuit court pursuant to W.Va.R.Civ.P. Rule 67. The second order found that the judgment against the defendant had been satisfied and released by the aforementioned deposit. We conclude that the circuit court erred in distributing the funds to McDaniel's insurance carrier. We further conclude that the court did not ·err in finding that the judgment against the defendant had been satisfied and released. Therefore, we affirm, in part, and reverse, in part, the rulings of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The event underlying the present dispute was an automobile accident between appellant Jeffrey McDaniel [hereinafter McDaniel], plaintiff below, and appellee Irene Adair Kleiss [hereinafter Kleiss], defendant below. McDaniel subsequently filed a lawsuit against Kleiss seeking damages for bodily injuries he sustained in the automobile accident. At the time of the collision, Kleiss had liability insurance coverage in the amount of $100,000.00 through an automobile insurance policy issued by USAA Insurance Company [hereinafter USAA]. In addition, McDaniel had $100,000.00 in underinsured motorist coverage under a policy of automobile insurance issued by Aetna, The Standard Fire Insurance Company [hereinafter Aetna], appellee herein, and intervenor below. Thus, the combined liability and underinsured motorist coverage for the above referenced accident was limited to $200,000.00.

USAA, acting on behalf of Kleiss, offered to settle the case prior to trial for $100,-000.00, the limits of the liability policy issued to Kleiss. However, the offer was conditioned upon a consent to settlement and waiver of subrogation rights by Aetna. Aetna contends that it rejected the settlement offer based upon its determination that Kleiss possessed substantial personal assets that might be reached to satisfy any subroga-

tion interest that might accrue to Aetna. It is undisputed that Aetna and McDaniel anticipated that the trial would result in a jury verdict in excess of $200,000.00. In other words, any jury verdict was expected to exceed the combined policy limits of Kleiss's liability coverage and McDaniel's underinsured motorist coverage.

After efforts to settle the claim with Kleiss and USAA failed, but prior to trial, Aetna and McDaniel entered into a release agreement. The release provided that Aetna would pay to McDaniel $100,000.00 "underinsured motorist coverage benefits" and would waive its right to reimbursement of medical payments made to McDaniel pursuant to the medical payments coverage provided in the automobile insurance policy issued to him. In exchange, McDaniel would release Aetna

> from all claims, demands, damages, actions, cause of actions [sic] or suits at law or in equity of whatsoever kind or nature arising out of the ... contract of automobile insurance [between Aetna and McDaniel] with regard to a motor vehicle collision involving Jeffrey McDaniel which occurred on or about the third day of December, 1991 ....

McDaniel would further agree to subordinate to the interests of Aetna any right he possessed or might acquire to proceed against the personal assets of Kleiss for satisfaction of any unpaid portion of any judgment in excess of $200,000.00 arising from the civil action McDaniel filed against Kleiss.

Following trial, the jury found that McDaniel was contributorily negligent with respect to the accident. The jury apportioned McDaniel's fault at forty percent, and returned a verdict in favor of McDaniel in the amount of $154,823.42. However, the trial judge reduced the verdict by forty percent and awarded McDaniel $92,893.80, plus prejudgment interest in the amount of $7,080.44, for a total award of $99,974.24.

Aetna subsequently issued a letter to McDaniel's lawyer expressing its position that

> McDaniel's obligation to protect Aetna's subrogation rights against the Defendant, both pursuant to his insurance contract with Aetna and the Release executed by him in consideration of Aetna's good faith settlement, encompasses taking necessary measures including retrial either before or after appeal to assure that this verdict is vacated and a proper one entered.

Aetna demanded that McDaniel "seek a new trial ... and, if denied, pursue reversal in the Supreme Court of Appeals."

McDaniel then filed a motion requesting the circuit court to alter or amend the judgment as provided for in Rule 59(e) of the West Virginia Rules of Civil Procedure.[1] McDaniel argued that the court had erred by reducing the jury award by the forty percent of liability assigned to him, because the jury had already reduced the verdict by that amount. Thereafter, McDaniel also filed a motion, pursuant to W.Va.R.Civ.P. Rule 60(b),[2] for relief from the final judgment order. The circuit court agreed that the verdict was twice reduced by the forty percent apportioned as McDaniel's contributory negligence. Consequently, the court increased the award to $154,823.42 plus prejudgment interest of $30,615.95, for a total amended award of $185,439.37. Kleiss appealed the amended verdict to this Court. We found that the circuit court had erred, and we reinstated the original judgment of $99,974.24. *See McDaniel v. Kleiss*, 198 W.Va. 282, 480 S.E.2d 170 (1996).

Meanwhile, USAA, acting on behalf of Kleiss, obtained the trial court's permission to deposit the $100,000.00 proceeds of Kleiss's liability insurance coverage in the registry of the circuit court, pursuant to W.Va.R.Civ.P. Rule 67.[3] Aetna sought leave

---

1.  W.Va.R.Civ.P. Rule 59(e) states:
    *Motion to Alter or Amend a Judgment.*—A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

2.  W.Va.R.Civ.P. Rule 60(b) provides that the circuit court may relieve a party from a final

judgment when the judgment is the result of mistakes, inadvertence, excusable neglect, or unavoidable cause, or when there is newly discovered evidence or proof of fraud, etc.

3.  See *infra* note 12 for text of W.Va.R.Civ.P. Rule 67.

to intervene and participate in the proceedings related to the disposition of the $100,000.00 deposited by USAA. A dispute then arose between McDaniel and Aetna over which of them was entitled to the deposited funds. Both Aetna and McDaniel moved to receive distribution of the funds. By order entered January 14, 1997, the trial court ordered the distribution of $99,974.24, the amount of the original jury verdict, plus interest, that had been reinstated by this Court, to Aetna.[4]

Upon entry of the order distributing the funds to Aetna, Kleiss filed a motion asking the circuit court to deem the judgment against her discharged and satisfied. In the meantime, McDaniel sought, pursuant to W.Va.R.Civ.P. Rule 59(e), an order altering or amending the judgment reflected in the order of January 14, 1997. By order entered March 25, 1997, the circuit court denied McDaniel's motion. On the same day, the court entered a second order granting Kleiss's motion to deem the judgment against her discharged and satisfied. It is from these two orders that McDaniel now appeals.

## II.

## STANDARD OF REVIEW

In the case *sub judice*, we are asked to rule upon the correctness of an order issued by the circuit court distributing funds that had been deposited with it pursuant to W.Va. R.Civ.P. Rule 67. Resolution of this issue requires that we review the provisions of a contract entered between the parties to this appeal. As explained below, we find that the contractual language is clear and unambiguous. Thus, there are no factual findings by the circuit court that must be considered to interpret the contract. We are also asked to determine whether the circuit court correctly found that a judgment had been satisfied and released. These issues present questions of law, which we will review *de novo*. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III.

## DISCUSSION

### A.

### *RELEASE*

McDaniel first argues that the circuit court erred by denying his motion to alter or amend the judgment entered on January 14, 1997, which distributed to Aetna $99,974.24 of the funds deposited by USAA. In support of this argument, McDaniel contends that the court misinterpreted his release agreement with Aetna.[5] McDaniel submits that the release is clear and unambiguous, and was an agreement between McDaniel and Aetna which modified their original agreement made via the insurance policy. According to McDaniel the $100,000.00 consideration he was paid was exactly that: consideration given in exchange for McDaniel giving up certain rights in favor of Aetna. McDaniel argues that Aetna did not buy any right to the USAA insurance proceeds. Moreover, the

---

4. The remaining portion of the $100,000.00 deposited by USAA apparently remains in the circuit court registry.

5. The relevant portion of the release agreement states:

> For the consideration above set forth the said Jeffrey McDaniel does further agree to subordinate to the interests of Aetna the Standard Fire Insurance Company all present and future rights and interests which he may possess or which may hereinafter accrue to him, including, but not limited to, any right of priority established or recognized by the Supreme Court of Appeals of West Virginia in the case of *[State ex rel.] Allstate Insurance Co. v. Karl,*

[190 W.Va. 176,] 437 S.E.2d 749 (1993), to proceed against the personal assets of Irene Adair Kleiss, her heirs or assigns, for satisfaction of any unpaid portion of any judgment arising from the aforesaid Civil Action in excess of $200,000.00 which is the total amount of the liability insurance coverage of the defendant therein, Irene Adair Kleiss, and the said Jeffrey McDaniel's underinsured motorist coverage herein tendered until such time as the subrogation interests of Aetna, the Standard Fire Insurance Company arising from the payment of the consideration herein have been satisfied in full.

money was paid prior to entry of the jury verdict and therefore could not have been paid in satisfaction thereof. More simply put, Aetna did not pay McDaniel's damages, rather it purchased his rights. Therefore, McDaniel argues, Aetna is not entitled to a subrogation claim against the jury award.

Although McDaniel states that the release contract is clear and unambiguous, he nevertheless proceeds to argue that the intent of the parties is at issue. He avers that Aetna anticipated a jury verdict in this case in excess of $200,000.00. It was this anticipated verdict, McDaniel suggests, that prompted Aetna to enter into the release agreement to improve its ability to execute against the personal assets of defendant Kleiss. Furthermore, noting that the agreement was executed shortly after this Court's opinion in *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994),[6] McDaniel contends that Aetna, by virtue of the release, bought protection for itself against a potential excess underinsured claim under *Marshall.* McDaniel also argues that Aetna can point to no language in the release that permits it to proceed against defendant Kleiss's liability policy limits, and the release did not require McDaniel to reimburse Aetna for the $100,000.00 if he lost the case. Additionally, McDaniel claims that a letter from Aetna, dated January 10, 1995, which demanded that McDaniel challenge the jury verdict as part of his duty to protect Aetna's subrogation rights, is evidence that Aetna did not believe it was enti-

tled to Kleiss's insurance proceeds. Finally, McDaniel argues that an insurer's subrogation rights do not attach unless and until a defendant's liability coverage is exhausted. Since the verdict was less than Kleiss's liability coverage, McDaniel was not entitled to any disbursement of underinsured coverage, and likewise, Aetna's subrogation rights did not attach.

In reply, Aetna contends that it is entitled to subrogation under the plain and unambiguous language of the policy of insurance,[7] under the plain and unambiguous language of the release agreement, and under W.Va.Code § 33–6–31(f) (1995) (Repl.Vol.1996).[8] Aetna argues that because the release is unambiguous, McDaniel cannot use parol evidence to create ambiguity that does not exist on the face of the document. Moreover, Aetna contends that, assuming *arguendo* the existence of some ambiguity on the face of the release, the parol evidence relied on by McDaniel does not clarify the release. Aetna maintains that the letter of January 10, 1995, addressed Aetna's valid concerns that Kleiss and/or McDaniel would seek to compromise its subrogation claim.

Aetna argues further that it is well-established that the provisions of both a prior and subsequent contract between the same parties, referencing the same subject matter, will be enforced except as to those provisions of the prior contract which are inconsistent with the subsequent contract. Aetna submits that there is no inconsistency between

6. Syllabus point 7 of *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994), states:

Where an uninsured or underinsured motorist insurance carrier fails to settle within its policy limits, it may be liable in a separate suit for the excess verdict returned by a jury for its failure to make a good faith settlement within its policy limits under the principles set out in *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990).

7. The policy provisions referred to by Aetna state:

**6. OUR RIGHT TO RECOVER PAYMENT**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights and shall do nothing after loss to prejudice them.

B. If we make payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment.

8. W.Va.Code 33–6–31(f) (1995) (Repl.Vol.1996) states, in relevant part:

An insurer paying a claim under the endorsement or provisions required by subsection (b) of this section [which contains provisions related to uninsured and underinsured motorist coverage] shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made.

the original insurance contract and the release.

The plain meaning of the contract, according to Aetna, is that, in the event of an excess verdict wherein McDaniel would have priority in pursing the personal assets of Kleiss, that priority would be subordinated to the rights of Aetna to proceed against those same personal assets in satisfaction of its rights of subrogation arising from payment to McDaniel of the policy limits of his underinsured motorist coverage. Aetna argues that this was an eventuality that never materialized and the rights afforded Aetna by McDaniel in the release have no bearing upon the present issue because the language in the release did not alter Aetna's rights of subrogation under the basic insurance contract or W.Va.Code § 33–6–31(f).

In addition, Aetna argues that even if the release is found to be ambiguous, the rules of judicial construction of contracts do not permit the inference that Aetna's preexisting rights of subrogation were waived or modified by the release. According to Aetna, the release references only two purposes: (1) to discharge McDaniel's claims against Aetna and (2) to subordinate to Aetna McDaniel's rights as to Kleiss in the event of a judgment in excess of all available insurance coverages. Aetna argues further that reference to "$100,000.00 underinsured motorist coverage benefits" in the release unequivocally references payment of funds on the same terms as they would have been payable if McDaniel had established his legal right to underinsured motorist proceeds.

Aetna also declares that it was not motivated to enter into the release agreement by this Court's opinion in *Marshall v. Saseen.* Aetna states that it was under no obligation to settle the claim with McDaniel because, as Aetna interprets the events, Kleiss and USAA merely made a request for an offer to settle, and never made an unconditional proffer of the limits of Kleiss's liability insurance coverage.

Finally, Aetna argues that equitable principles provide: (1) that one who answers for the obligation of another is subrogated to the payee's rights against the responsible party, and (2) the law disfavors and seeks to avoid double recovery.

▪ We begin our analysis of this case by determining whether the policy of insurance and the release comprise a single contract or two distinct agreements. We have previously held that "[s]eparate written instruments will be construed together and considered to constitute one transaction where the parties and the subject matter are the same, and where there is clearly a relationship between the documents." Syl. pt. 3, *McCartney v. Coberly,* 250 S.E.2d 777 (1978), *overruled on other grounds by* Syllabus point 2, *Overfield v. Collins,* 199 W.Va. 27, 483 S.E.2d 27 (1996). *See also Ashland Oil, Inc. v. Donahue,* 159 W.Va. 463, 469, 223 S.E.2d 433, 437 (1976) ("It is a well-recognized principle of law that, even though writings may be separate, they will be construed together and considered to constitute one transaction when the parties are the same, the subject matter is the same, and the relationship between the documents is clearly apparent." (citations omitted)).

▪ After examining the two documents in question, we conclude that the release and the initial insurance policy do not comprise a single contract; instead, we find that they are two separate and distinct contracts. Generally, an insurance policy sets forth an agreement between parties whereby the insured agrees to pay a specified premium, and, in exchange, the insurer agrees to indemnify the insured against the type of losses contemplated within the terms of the policy yet unknowable at its issuance. *See* W.Va.Code § 33–1–1 (1957) (Repl.Vol.1996) ("Insurance is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies."). *See also Fraser–Yamor Agency, Inc. v. County of Del Norte,* 68 Cal.App.3d 201, 213, 137 Cal.Rptr. 118, 125 (1977) ("an insurance policy is a contract between the insurer ... and the insured ... whereby for a premium paid by the insured the insurer undertakes to indemnify the insured against loss, damage, or liability arising from a contingent or unknown event" (citations omitted)); *Huff v. St. Joseph's Mercy Hosp. of Dubuque Corp.,* 261 N.W.2d 695, 700 (Iowa 1978)

("'"'"the term "insurance," or "insurance contract," or "insurance policy," ... denotes a contract by which one party, for a compensation called the "premium," assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency'"'" (citation omitted)). Given this general definition, we can infer that the insurance policy issued by Aetna to McDaniel specified a premium to be paid by McDaniel in exchange for the promise that Aetna would indemnify him should he suffer the type of loss contemplated within the terms of the policy, but nevertheless unknowable at that time.[9]

■ By contrast, the main purpose of a release typically is the voluntary relinquishment of a claim or right by one who, absent the release, could have enforced such claim or right. *See generally* 16 Michie's Jurisprudence *Release* § 2, at 62 (1987) ("A release is the act or writing by which some claim or interest is surrendered to another person. It is the giving up or abandoning a claim or right to the person against whom the claim exists or the right is to be exercised and enforced."). The release document at issue in this case, therefore, was not a subsequent policy of insurance. Rather, the release document was a separate contract entered into by the parties with respect to a particular known loss, in this case the automobile accident, which had already occurred. In this regard, the release contract sets forth certain rights and obligations of the parties specific to that particular loss.

In addition to having two distinct purposes, the remaining aspects of the insurance policy and the release agreement indicate a difference in the subject matter addressed in each document. Particularly noteworthy of the documents' independence from one another is the fact that the parties' rights and obligations had changed between the issuance of the insurance policy and the time the release agreement was made. At the time of the release agreement, a loss had occurred and was no longer an unknown contingency. While the release agreement is related to the insurance policy, it does not address the same subject matter such that it must be read together with the policy as if they are one contract.

To determine whether the automobile insurance policy and the release constitute a separate or a singular agreement, we must also examine the relationship between the two documents. Certainly, absent the existence of the automobile insurance policy, there would have been no reason for Aetna to negotiate the release. However, this fact alone is insufficient upon which to find that the two documents are so closely related that they become a single contract. Previously, we have found a single contract to exist where the two agreements were signed contemporaneously or where the earlier contract was specifically referenced in the later contract. For example, in *McCartney v. Coberly*, a mother transferred custody of her small child by signing several documents on the same occasion. The documents included a "written custody agreement" and a "'consent to permit adoption.'" *McCartney* 250 S.E.2d at 778. The custody agreement permitted revocation of the change in custody; however, the adoption consent apparently did not. In response to the defendant's argument that the adoption consent was irrevocable, this Court, observing that "the consent for adoption was qualified by the custody agreement," found the multiple documents comprised a single contract. *Id.* 250 S.E.2d at 780. The *McCartney* Court reasoned that "the consent to adopt form was signed along with the written custody agreement and other documents, all of which clearly indicate that [the mother] did not intend to relinquish permanent custody of her child during the six-month probationary period." *Id.* 250 S.E.2d at 779.

Likewise, *Ashland Oil, Inc. v. Donahue*, involved a lease agreement and dealer contract that were entered into on the same day. The *Donahue* Court observed

> The lease agreement and the dealer contract involved in this case are clearly agreements between the same parties; the relationship between the documents is ap-

---

9. At this juncture, we note that the parties failed to submit the entire policy as part of the record on appeal. Thus, our review of the policy is limited to the portion before us.

parent, since they deal with the operation of a gasoline station at identified premises and provide for the same initial term and automatic extensions from year to year; they provide for the sale and delivery of gasoline; they provide for the conduct of the business on the part of Donahue with skill and diligence; and the rental in the lease is tied directly to the gasoline which is provided for in the dealer contract.

*Donahue* at 469, 223 S.E.2d at 437. This Court also addressed a similar issue in *Art's Flower Shop v. C & P Telephone Co.,* 186 W.Va. 613, 413 S.E.2d 670 (1991). In that case the parties had entered into a contract in 1978, and subsequently executed another contract in 1981. The 1981 contract specifically stated "ALL OTHER TERMS AND CONDITIONS WILL REMAIN AS PREVIOUSLY SIGNED." *Art's* at 616, 413 S.E.2d at 673. The *Art's Flower Shop* Court found that the terms of the 1978 contract were properly incorporated by reference into the 1981 contract. *Id.* The Court further concluded that the criteria set forth in *Ashland Oil, Inc. v. Donahue,* that the parties and subject matter be the same and the relationship between the documents be clear, were fulfilled in this instance.

In the case *sub judice* the insurance policy and the release agreement were not entered contemporaneously as were the documents in the *McCartney* and *Donahue* cases.[10] Moreover, unlike *Art's Flower Shop,* there was no attempt to incorporate the policy into the terms of the release. Comparing the facts of this case to those discussed above, we can find no clear relationship between the insurance policy and the release such that we can conclude that they represent a single contract. Therefore, the terms of the release, standing alone, determine the proper party to receive the proceeds of the judgment against Kleiss.

■ We have reviewed the language contained in the release agreement and find that it is clear and unambiguous. Therefore, we need not resort to the rules of construction. *See* Syl. pt. 1, *Fraternal Order of Police, Lodge No. 69 v. City of Fairmont,* 196 W.Va.

97, 468 S.E.2d 712 (1996) ("' "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962), Syllabus Point 3.' Syllabus Point 2, *Bennett v. Dove,* 166 W.Va. 772, 277 S.E.2d 617 (1981)."). *Cf.* Syl. pt. 2, *Louk v. Isuzu Motors, Inc.,* 198 W.Va. 250, 479 S.E.2d 911 (1996) ("' "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970).' Syllabus point 1, *Russell v. State Automobile Mutual Insurance Company,* 188 W.Va. 81, 422 S.E.2d 803 (1992).").

With respect to Aetna's right to recover a payment made to McDaniel, the release plainly states:

For the consideration above set forth the said Jeffrey McDaniel does further agree to subordinate to the interests of Aetna the Standard Fire Insurance Company all present and future rights and interests which he may possess or which may hereinafter accrue to him, including, but not limited to, any right of priority established or recognized by the Supreme Court of Appeals of West Virginia in the case of *[State ex rel.] Allstate Insurance Co. v. Karl,* [190 W.Va. 176,] 437 S.E.2d 749 (1993), to proceed against the personal assets of Irene Adair Kleiss, her heirs or assigns, *for satisfaction of any unpaid portion of any judgment arising from the aforesaid Civil Action in excess of $200,-000.00* which is the total amount of the liability insurance coverage of the defendant therein, Irene Adair Kleiss, and the said Jeffrey McDaniel's underinsured motorist coverage herein tendered until such time as the subrogation interests of Aetna, the Standard Fire Insurance Company arising from the payment of the consideration herein have been satisfied in full.

10. The time that elapsed between the formation of the insurance policy and the execution of the release agreement is not apparent from the record presented on appeal.

(Emphasis added). Pursuant to the above quoted language, Aetna's right to recover was contingent upon a judgment in excess of $200,000.00. Because the judgment in this case was less than $200,000.00, Aetna had no right under the release agreement to the funds deposited with the circuit court by Kleiss's insurer.

■ Furthermore, we find Aetna's argument that it has a right to subrogation under W.Va.Code § 33–6–31(f) to be unpersuasive. W.Va.Code § 33–6–31(f) states, in relevant part: "An insurer paying a claim under the endorsement or provisions *required by subsection (b)* of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made." (Emphasis added). W.Va.Code § 33–6–31(b) contains provisions related to uninsured and underinsured motorist coverage.[11] Because the money paid as consideration for McDaniel's release was made prior to a determination of Kleiss's liability to McDaniel for the accident, and because the judgment was within the limits of Kleiss's liability insurance (and therefore McDaniel's underinsured motorist coverage would not have been triggered), the $100,-000.00 payment by Aetna was not "required by subsection (b)." Therefore, W.Va.Code § 33–6–31(f) does not apply to the circumstances presented by this case. Accordingly, we conclude that the circuit court erred, as a matter of law, by distributing to Aetna the funds Kleiss's insurer deposited with the circuit court to satisfy the judgment against Kleiss.

## B.

### DISCHARGE AND SATISFACTION OF JUDGMENT BY KLEISS

■ McDaniel argues that because he has received no funds in satisfaction of his judgment, the circuit court erred in deeming the judgment discharged and satisfied. McDaniel argues that the $100,000.00 he received from Aetna was not to satisfy the judgment, which did not even exist when Aetna paid the

11. W.Va.Code § 33–6–31(b) (1995) (Repl.Vol. 1996) states:

Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of this code, as amended from time to time: Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident: Provided, however, That such endorsement or provisions may exclude the first three hundred dollars of property damage resulting from the negligence of an uninsured motorist: Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he

shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. Regardless of whether motor vehicle coverage is offered and provided to an insured through a multiple vehicle insurance policy or contract, or in separate single vehicle insurance policies or contracts, no insurer or insurance company providing a bargained for discount for multiple motor vehicles with respect to underinsured motor vehicle coverage shall be treated differently from any other insurer or insurance company utilizing a single insurance policy or contract for multiple covered vehicles for purposes of determining the total amount of coverage available to an insured. "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

money. McDaniel characterizes the money paid by Aetna as a collateral source payment that cannot reduce his judgment against Kleiss. *See* Syl. Pt. 4, in part, *Johnson v. General Motors*, 190 W.Va. 236, 438 S.E.2d 28 (1993) ("The collateral source rule operates to preclude the offsetting of uninsured or underinsured benefits since the benefits are the result of a contractual arrangement which is independent of the tortfeasor.").

Aetna replies that McDaniel has misapplied the collateral source rule, which operates to preclude a tortfeasor from *offsetting or reducing* his liability to a plaintiff—not to prevent a third party from *discharging* that liability. Aetna states that in the present case there has been no set off on the basis of the payment at issue, and the collateral source rule has not been invoked. Appellee Kleiss argues that payment in full to a person authorized to receive such payment operates as a discharge of the judgment.

We conclude that the circuit court's order finding the judgment against Kleiss was satisfied and discharging such judgment was correctly entered. USAA deposited with the circuit court the amount of the judgment against Kleiss pursuant to W.Va.R.Civ.P. Rule 67.[12] In Syllabus point 4 of *Arcuri v. Great Am. Ins. Co.*, 176 W.Va. 211, 342 S.E.2d 177 (1986), we held:

> *W.Va.R.Civ.P.* 67 contemplates that a deposit or payment into court be with leave of court and that the money ordered deposited be subject to the exclusive control of the court. The party making the deposit must surrender all control over the money to the court, not to other persons claiming an interest in the money.

▮▮▮ Thus, upon receiving leave of the court to deposit the funds, a party is required to surrender all control over the money to the court. Under such circumstances,

it is absurd to argue that the judgment is not satisfied. We therefore hold that when a party deposits with a circuit court a sum of money or any other thing capable of delivery, and does so in compliance with the provisions of W.Va.R.Civ.P. Rule 67, the circuit court may enter an order finding the judgment satisfied and released upon determining that the sum of money or other thing deposited is at least equal to the amount of the final judgment. Where an appeal is taken, the authority of the circuit court to enter an order finding satisfaction and release of a final judgment is stayed pending the ultimate resolution of the appeal by this Court. Furthermore, where there is no appeal, the release and settlement order may be entered upon the expiration of the period for appeal. Other courts have reached a similar conclusion. *See United States Overseas Airlines, Inc. v. Compania Aerea Viajes Expresos De Venezuela, S.A.*, 161 F.Supp. 513, 515 (1958) (interpreting Rule 67 of the Federal Rules of Civil Procedure and Rule 14 of the General Rules of the United States District Court, Southern District of New York, and concluding that when a judgment debtor is "ready, willing and able" to pay a judgment, but is unsure as to whom the judgment should be paid, the judgment debtor "should be permitted to pay the amount of the judgment into court *and to have the Clerk enter a satisfaction of judgment*" (emphasis added)); *Treadwell Ford, Inc. v. Courtesy Auto Brokers, Inc.*, 426 So.2d 859, 861 (Ala.Civ.App. 1983) (recognizing payment of a judgment to the clerk of the circuit court was permitted under state code, and stating "[p]ayment to some person authorized by law to receive the judgment may operate as a release or satisfaction of a judgment"); *Hart v. Jett Enterprises, Inc.*, 744 P.2d 561, 562 (Okla.1985) (stating "[a]ppellant acknowledges the generally accepted rule that actual payment of a

---

12. W.Va.R.Civ.P. Rule 67 states:

Except as otherwise provided in Rule 68(b), in an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party and by leave of court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum

or thing. The party making the deposit shall serve the order permitting deposit on the clerk of the court. Money paid into court under this rule shall be deposited and withdrawn in accordance with applicable statutes and with orders of the court entered in the action. The fund shall be deposited in a federally insured interest-bearing account or invested in an interest-bearing instrument approved by the court.

judgment in full to a person authorized to receive it operates as a discharge of the judgment" (footnote omitted)). *See generally* 23 Am.Jur.2d *Deposits in Court* § 3, 739 (1983) ("[A] judgment debtor ready, willing, and able to pay the judgment but in doubt as to who to pay because of conflicting claims asserted by creditors of the judgment creditor is entitled to deposit the amount of the judgment in court and receive a satisfaction thereof from the clerk." (footnote omitted)); 47 Am.Jur.2d *Judgments* § 1019, 451 (1995) ("Actual payment of a judgment in full to a person authorized to receive it operates as a discharge of the judgment. Thus, where the clerk of the court is authorized by law to receive the judgment, a defendant may satisfy the judgment by paying it to the clerk." (footnotes omitted)).

In this case, the fact that a dispute arose between Aetna and McDaniel over the identity of the proper party to receive distribution of the funds deposited with the circuit court does not alter the fact that the full amount of the judgment was paid to the circuit court on behalf of Kleiss. The circuit court is authorized by our rules of civil procedure to receive such payments, upon its own consent. The court agreed to receive the amount of the judgment on behalf of Kleiss. Payment of that amount was deposited with the court by Kleiss's insurer. In this case, the amount of the judgment was not finally established until the appeal of that judgment was resolved by this Court. *McDaniel v. Kleiss,* 198 W.Va. 282, 480 S.E.2d 170 (1996). Once the judgment had been affirmed by this Court, and it could be ascertained that the amount deposited with the court on behalf of Kleiss was at least equal to the amount of the judgment, the circuit court properly concluded that the judgment against Kleiss had been satisfied and released.[13]

### IV.

### CONCLUSION

For the reasons explained in this opinion, we find that the circuit court erred when it

distributed to Aetna the funds deposited with the court pursuant to W.Va.R.Civ.P. Rule 67. Therefore, the March 25, 1997, order of the Circuit Court of Berkeley County that denied McDaniel's motion to alter or amend judgment is reversed, and this case is remanded with directions to enter an order consistent with this opinion. In addition, we conclude that the circuit court correctly found that the judgment against Kleiss had been satisfied and released. Accordingly, the March 25, 1997, order of the Circuit Court of Berkeley County that found the judgment against Kleiss had been discharged and satisfied is affirmed.

Reversed, in part, affirmed, in part, and remanded.

---

13. McDaniel also argues that he is entitled to post-judgment interest. This issue was not addressed by the circuit court. Therefore, we will not address it on appeal. "We frequently have held that issues which do not relate to jurisdictional matters and which have not been raised before the circuit court will not be considered for the first time on appeal to this Court." *Kronjaeger v. Buckeye Union Ins. Co.,* 200 W.Va. 570, 585, 490 S.E.2d 657, 672 (1997) (citations omitted).