IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

FILED
April 10, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 18-0605

TD AUTO FINANCE LLC, FOCUS RECEIVABLES MANAGEMENT,
and NORTHSTAR LOCATION SERVICES, LLC,
Defendants Below, Petitioners

v.

FREDDIE REYNOLDS and SHELBY REYNOLDS,
Plaintiffs Below, Respondents

Appeal from the Circuit Court of Mercer County, West Virginia
The Honorable Mark Wills, Judge
Civil Action No. 17-C-372-MW

AFFIRMED

Submitted:  January 15, 2020
Filed:  April 10, 2020

Daniel J. Konrad, Esq.
DINSMORE & SHOHL LLP
Huntington, West Virginia
Attorney for Petitioners

Raymond S. Franks, II, Esq.
BAILEY & GLASSER, LLP
Charleston, West Virginia
Steven J. Broadwater, Jr., Esq.
HAMILTON, BURGESS, YOUNG
 & POLLARD, PLLC
Fayetteville, West Virginia
Attorneys for Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE HUTCHISON concurs and reserves the right to file a separate opinion.
CHIEF JUSTICE ARMSTEAD and JUSTICE JENKINS dissent and reserve the right to
file separate opinions.

SYLLABUS BY THE COURT

1.      "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."  Syl. Pt. 1, *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W.Va. 465, 796 S.E.2d 574 (2017).

2.      "When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement."  Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

3.      "'Separate written instruments will be construed together and considered to constitute one transaction where the parties and the subject matter are the same, and where there is clearly a relationship between the documents.' Syllabus point 3, *McCartney v. Coberly*, ——W.Va. ——, 250 S.E.2d 777 (1978), *overruled on other grounds by* Syllabus point 2, *Overfield v. Collins*, 199 W.Va. 27, 483 S.E.2d 27 (1996)." Syl. Pt. 1, *McDaniel v. Kleiss*, 202 W. Va. 272, 273-74, 503 S.E.2d 840, 841-42 (1998).

4.      "Ordinarily an assignee acquires no greater right than that possessed by his assignor, and he stands in his shoes; and an assignee takes subject to all defenses and all equities which could have been set up against an instrument in the hands of an

i

assignor at the time of the assignment." Syl. Pt. 10, *Lightner v. Lightner*, 146 W.Va. 1024, 124 S.E.2d 355 (1962).

WORKMAN, Justice:

This is an appeal from the Circuit Court of Mercer County's denial of petitioners TD Auto Finance LLC ("TD Auto Finance"), Focus Receivables Management, LLC, and Northstar Location Services, LLC's (collectively "petitioners") motion to compel arbitration of respondents Freddie and Shelby Reynolds' ("respondents") claims against them. The circuit court found that a merger clause in the Retail Sales Installment Contract supplanted a prior agreement to arbitrate contained in a credit application executed by respondents.

Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we conclude that the credit application and Retail Installment Sales Contract did not constitute contemporaneously-executed documents which were part of a singular transaction. As such, the merger clause contained in the Retail Installment Sales Contract served to supersede the arbitration agreement contained in the previously-executed credit application and contained no requirement to arbitrate. Accordingly, we affirm the circuit court's denial of petitioners' motion to compel arbitration.

## I. FACTS AND PROCEDURAL HISTORY

On November 14, 2014, respondents purchased a new 2014 Chevrolet Silverado truck from Crossroads Chevrolet ("Crossroads"). During their interactions with Crossroads, respondents executed a credit application permitting Crossroads to effectively

1

investigate and "shop" their credit around to potential financing companies for the purchase of a vehicle. Upon negotiating and reaching an agreement as to the purchase of a 2014 Chevrolet Silverado, respondents subsequently executed a Retail Installment Sales Contract ("RISC") for the purchase of the truck.

The credit application first executed by respondents states that by executing the application, respondents "authorize dealer and any finance company, bank or other financial institution to which the Dealer submits my application," to investigate their credit and employment history. The form credit application contains a paragraph that applies to "applications submitted to TD Auto Financial LLC Only" and provides that "in exchange for the time, effort, and expense in reviewing your application and for other valuable consideration . . . [respondents] agree to all of the terms of the TD Auto Finance LLC Contract of Arbitration contained in [the] application . . . ." The "Contract of Arbitration," which comprises page six[1] of the credit application, provides:

> Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this Important Contract of Arbitration or the arbitrability of any issue), between our employees, parents, subsidiaries, affiliate companies, agents, successors or assignees, which arises out of or relates to this application and Important Contract of Arbitration, any installment sale contract or lease agreement, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this application and important Contract of Arbitration)

---

[1]There is no page five of the document (skipping from page four to page six); however, petitioners' counsel represented that there was no such page in the document and the non-serial page numbering was an error of some sort.

2

shall, at the election of any of us . . . . be resolved by a neutral, binding arbitration and not by a court action.

The record contains no information about precisely when, during the course of respondents' interaction with Crossroads, this document was executed. However, in oral argument below and before this Court, counsel for petitioners conceded that common sense suggests it was executed at some point prior to the RISC, as a necessary precursor to the sales transaction.

The RISC was executed by respondents and Crossroads to consummate the purchase of the truck. The RISC provides that it is for the purchase of a 2014 Chevrolet Silverado in the amount of $37,700.21 and financing in the amount of $46,811.18. The final page of the document contains what is commonly known as a "merger" or "integration" clause, as follows: "HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding."

This specific paragraph is signed by both respondents and a representative of Crossroads. Importantly, however, the document concludes with a contemporaneous assignment of the RISC from Crossroads to petitioner TD Auto Finance. The final paragraph states: "Seller assigns its interest in this contract to TD AUTO FINANCE LLC (Assignee) under the terms of Seller's agreement(s) with Assignee." It is signed by the

President of Crossroads Chevrolet LLC. Petitioner TD Auto Finance's name has been typed into the form.

Respondents ultimately defaulted on their loan and petitioner TD Auto Finance began collection efforts by referral to collection agencies—petitioners Focus Receivables Management, LLC and Northstar Location Services, LLC. Respondents allege that the collection agencies harassed them by phone even after being advised they were represented by counsel. As a result, they filed a complaint asserting violations of the West Virginia Consumer Credit and Protection Act, among other claims,[2] and naming petitioners as defendants. Petitioners moved to compel arbitration on the basis of the arbitration provision contained in the credit application.[3]

The circuit court denied the motion, finding that the credit application and attendant arbitration clause constituted "an entirely separate transaction" from the RISC inasmuch as "typically" a credit check and application precedes the negotiations regarding

---

[2] In addition to their claims under the West Virginia Consumer Credit and Protection Act, respondents alleged violations of the West Virginia Computer Crimes Act, intentional infliction of emotional distress, and invasion of privacy.

[3] In a supplemental filing below, petitioners asserted that the issue of arbitrability must be determined by the arbitrator, rather than the circuit court, as a result of the purported delegation provision in the arbitration agreement. The circuit court did not address this issue and petitioners do not raise it in this appeal.

(continued . . .)

4

the sale.[4]  Accordingly, it found that the credit application and RISC were not part of the same transaction and therefore were not required to be construed together.  Further, the circuit court found that petitioners' failure to have an arbitration agreement signed at the same time as the RISC, included in the RISC, or at a minimum, incorporated by reference into the RISC, was fatal to its claim for arbitration.  Petitioners then filed the instant appeal.

## II.  STANDARD OF REVIEW

This Court has held that "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc*., 238 W.Va. 465, 796 S.E.2d 574 (2017).  With this standard in mind, we consider the parties' arguments.

## III.  DISCUSSION

With respect to a trial court's consideration of a motion to compel arbitration, this Court has held:

> When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.

---

[4] The circuit court noted that there was no evidence presented as to specifically when the arbitration agreement was signed, but found that "the auto dealer cannot make an offer especially as to financing rate terms until after the buyer has a credit check."  As indicated *supra*, counsel for petitioners conceded to this order of events.

Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010). This case therefore requires this Court to determine whether the circuit court erred in determining that no valid arbitration agreement existed. To do so, we turn to governing West Virginia contract law: "[T]he issue of whether an arbitration agreement is a *valid* contract is a matter of state contract law and capable of state judicial review." *State ex rel. Clites v. Clawges*, 224 W. Va. 299, 305, 685 S.E.2d 693, 699 (2009) (emphasis in original). *See also Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 436, 781 S.E.2d 198, 213 (2015) (observing that whether a valid arbitration agreement exists is determined "[u]nder general principles of state contract law"); Syl. Pt. 4, in part, *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 228 W. Va. 125, 717 S.E.2d 909 (2011) ("[T]he trial court may rely on general principles of state contract law in determining the enforceability of the arbitration clause.").

The issue before the Court is whether the arbitration provision respondents agreed to in the credit application survives the "merger clause" in the RISC, which states that the RISC constitutes the "entire agreement" between the parties. This Court has explained that "[a] 'merger clause' is '[a] provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document.'" *Frederick Bus. Properties Co. v. Peoples Drug Stores, Inc.*, 191 W. Va. 235, 240 n.2, 445 S.E.2d 176, 181 n.2 (1994) (quoting Black's Law Dictionary 989 (6th ed. 1990)). Under the credit application, there is a clear agreement to arbitrate with TD Auto Finance; however, the RISC contains no such

6

arbitration agreement nor reference to the prior agreement, and explicitly purports to be the "entire agreement" between the parties.[5]

Petitioners contend that the arbitration agreement contained in the credit application and the RISC, which is silent on dispute resolution, are not in conflict and unmistakably demonstrate an agreement to arbitrate any claims involving petitioner TD Auto Finance. Citing highly similar extra-jurisdictional caselaw, petitioners contend that the arbitration agreement and RISC are "separate and distinct" collateral documents executed as part of a singular transaction and therefore must be construed together. Respondents, also citing factually-similar caselaw supportive of its position, maintain that the scope and purpose of the credit application was substantially unrelated to the ultimate vehicle purchase and therefore is merely a prior agreement which was "merged" into the RISC. The RISC, which respondents contend is the governing document, contains no requirement to arbitrate.

Several courts have had opportunity to examine the effect of a merger clause on separately executed arbitration agreements in cases with similar facts—vehicle purchasers who agree to arbitrate in one document but contemporaneously sign an installment sales contract that contains no arbitration provision, but includes a merger

_____

[5] Petitioners contend that the RISC is effectively a "third-party" contract that cannot affect its arbitration rights under the credit application inasmuch as Crossroads, and not TD Auto Finance, executed the RISC. As more fully discussed *infra*, this argument is without merit.

clause stating that it is the "entire agreement." These courts have universally cited to some iteration of the following well-recognized contract principle: "[A]bsent anything to indicate a contrary intention, written instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract or instrument, even though they do not by their terms refer to each other." 11 Williston on Contracts § 30:26 (4th ed.).

For example, in *Johnson ex rel. Johnson v. JF Enterprises, LLC* 400 S.W.3d 763, 768 (Mo. 2013), the Missouri Supreme Court rested its resolution on the "general rule that contemporaneously signed documents relating to one subject matter or transaction are construed together[.]" The *Johnson* court found that a separate, stand-alone arbitration agreement was enforceable where it was executed as one of a "pile of documents" which were executed "within minutes of each other, in a single sitting, as part of a single sales transaction." *Id*. at 768. Explaining that "[t]o protect the sanctity of the parties' written contract, all the provisions in the writing can and should be harmonized and given effect," it concluded that a valid arbitration agreement was created. *Id*. at 768. *See also Kates v. Chad Franklin Nat'l Auto Sales North, LLC*, No. 08-0384-CV-W-FJG, 2008 WL 5145942, at *4 (W.D. Mo. Dec. 1, 2008) (finding stand-alone arbitration agreement applicable and observing "the merger clause does not prohibit the forming of a separate arbitration agreement contemporaneously with the other contracts in this matter.").

8

Similarly, in *Najera v. David Stanley Chevrolet, Inc*., 406 P.3d 592 (Okla. Civ. App. 2017), the court found an arbitration agreement contained in a previously executed purchase agreement[6] was not rendered a nullity by the merger clause in the RISC. The court reasoned that by signing numerous documents contemporaneously, the totality of the documents formed the agreement and that to conclude that the RISC was the "only and complete agreement of the parties, execution of these other [contemporaneously-executed] documents would be rendered nugatory." *Id*. at 597. *See also Ramick v. Howard-GM II, Inc*., 414 P.3d 397, 400 (Okla. Civ. App. 2018) (requiring RISC to be construed with purchase agreement requiring arbitration where contracts were "'relating to the same matters'" and "'parts of substantially one transaction'" (citations omitted)). The *Najera* court relied on the Tenth Circuit's reasoning in *Mooneyham v. BRSI, LLC*, 682 Fed. Appx. 655, 660 (2017) which found that the merger clause may have precluded "incorporation of other agreements into the RISC[] [b]ut the clause doesn't preclude incorporation of other agreements into the transaction as a whole."

---

[6] Importantly, however, the Purchase Agreement in *Najera* containing the arbitration provision also provided that the agreement "and all written contracts relating to the same transaction . . . and made as part of substantially the same transaction . . . *shall be taken together and read as one document setting forth the terms of the parties agreement*." *Id*. at 595 (emphasis in original). *See also Bank Julius Baer & Co., Ltd. v. Waxfield Ltd*., 424 F.3d 278 (2d Cir. 2005) *abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) (finding merger clause "at odds" with Purchase Agreement incorporation clause providing that rights and remedies in Agreement, including arbitration, are "cumulative and not exclusive of any rights or remedies provided under any other agreement").

Courts in other states have used similar reasoning to conclude that a merger clause does not necessarily foreclose the enforceability of agreements reached in collateral documents, where they are contemporaneously executed as part of a single transaction. *See Ritter v. Grady Automotive Group, Inc.*, 973 So.2d 1058, 1062 (Ala. 2007) (finding stand-alone arbitration agreement valid and holding merger clause "does not bar evidence of contemporaneous collateral agreements between the parties"); *Lowe v. Nissan of Brandon, Inc.*, 235 So.3d 1021 (Fla. Dist. Ct. App. 2018) (upholding arbitration agreement in Purchase Agreement where executed with other purchase documentation contemporaneously); *Wells Fargo Auto Finance, Inc. v. Wright*, 698 S.E.2d 17, 19 (Ga. Ct. App. 2010) (finding stand-alone arbitration agreement valid where "retail sales contract, installment contract, and the [Arbitration] Agreement were executed simultaneously"); *Bartkus v. Thomas Motors of Joliet, Inc.*, No. 09-C-3005, 2009 WL 2766719 (N.D. Ill. Aug. 27, 2009) (suggesting that contemporaneous execution of RISC and purchase order requiring arbitration supersedes merger clause).[7]

Other courts, however, have interpreted merger clauses more strictly, refusing to allow predecessor or contemporaneous documents, which purport to add to or

---

[7] The Fourth Circuit has reached the same conclusion under similar facts, which has been followed as precedent by the Maryland Court of Appeals. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 700 (4th Cir. 2012) ("[T]he Buyer's Order and RISC were made a part of a single transaction, and should be interpreted together[.]"); *see also Ford v. Antwerpen Motorcars Ltd.*, 117 A.3d 21 (Md. 2015) (citing *Rota-McLarty* in support of rejection of merger clause in RISC as supplanting separate agreement to arbitrate in Buyer's Order).

alter the "final agreement," to require arbitration or other matters. In *Duval Motors Co. v. Rogers*, 73 So.3d 261 (Fla. Dist. Ct. App. 2011), the purchaser signed a Retail Buyer's Order containing an arbitration agreement, as well as a RISC containing the identical merger language as in the case at bar. The *Duval* court explained that the purpose of a merger clause is "'to affirm the parties' intent to have the parol evidence rule applied to their contracts.'" *Id*. at 265 (citations omitted). And as such, the parol evidence rule "precludes consideration of . . . evidence 'to contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to change, add to, or subtract from it, or affect its construction.'" *Id*. (citations omitted). The court therefore found that the integration or merger clause precluded applicability of the arbitration provision in the other document. *See also Weiszhaar v. Hampton Automotive Group, Inc.*, No. 5:12-cv-46/RS-GRJ, 2012 WL 2034783 (N.D. Fla. June 6, 2012) (same).

Likewise, the Florida appeals court in *HHH Motors, LLP v. Holt*, 152 So.3d 745, 748 (Fla. Dist. Ct. App. 2014) found that a purchase agreement containing an arbitration provision did not survive the merger clause in the RISC, stating succinctly: "If [the dealer] intended for credit buyers to be subject to the arbitration clause, then it could have said so in the RISC, but did not." *Accord Harbor Village Home Center, Inc. v. Thomas*, 882 So.2d 811, 816 (Ala. 2003) (finding that retail installment contract was "fully integrated agreement of the parties" and rejecting arbitration agreement which contained no purchase terms nor merger clause of its own); *Ex parte Palm Harbor Homes, Inc.*, 798 So.2d 656, 661 (Ala. 2001) (finding that drafters of installment contract "could easily have

11

included in the merger clause a specific reference to . . . free-standing instruments, thus identifying the instrument as a part of the integrated agreement" but failure to do so precluded consideration of arbitration provisions contained in free-standing documents); *Salvagne v. Fairfield Ford, Inc*., 794 F. Supp.2d 826, 832 (S.D. Ohio 2010) (finding RISC to be "standing alone, a fully integrated contract that by its terms was binding" and rejecting argument that terms contained in delivery agreement may alter RISC); *Gonzalez v. Consumer Portfolio Servs., Inc*., No. CL04-00092, 2004 WL 2334765 (Cir. Ct. of Va., Rockingham Co. Sept. 2, 2004) (refusing to enforce arbitration due to merger clause in RISC and construing contract against drafter).

Like the courts above, this Court has also recognized, generally, that contemporaneous documents which comprise a single transaction may be construed together:

> "Separate written instruments will be construed together and considered to constitute one transaction where the parties and the subject matter are the same, and where there is clearly a relationship between the documents." Syllabus point 3, *McCartney v. Coberly*, ——W.Va. ——, 250 S.E.2d 777 (1978), *overruled on other grounds by* Syllabus point 2, *Overfield v. Collins*, 199 W.Va. 27, 483 S.E.2d 27 (1996).

Syl. Pt. 1, *McDaniel v. Kleiss*, 202 W. Va. 272, 503 S.E.2d 840 (1998). Elaborating on this general rule, the *McDaniel* Court explained that "we have found a single contract to exist where the two agreements were signed contemporaneously or where the earlier contract was specifically referenced in the later contract." *Id*. at 279, 503 S.E.2d at 847.

12

We have not, however, had occasion to address the effect of a merger clause on this general principle.

While the cases argued by the parties represent divergent approaches to the effect of a merger clause on contemporaneously-executed documents and are tantalizingly similar in their facts, we find that this case does not require the Court to cast its lot with one approach or the other. Rather, our general rule on the construction of competing contractual agreements along with the particular facts of this case are sufficient to resolve the issue at hand. As noted above, our rule provides that *contemporaneously* executed agreements between the same parties and *relating to the same subject matter* may be construed together as part of one contract or transaction. Commensurately, the distinguishing factors in the cases cited by petitioners reveal that the competing documents were 1) signed contemporaneously as part and parcel of a larger purchase transaction; and 2) were either purchase-type agreements which, like the RISC, purport to govern the purchase or stand-alone arbitration agreements executed during consummation of the transaction.

In this case, however, it is undisputed that the credit application 1) was signed *before* and not contemporaneously with the RISC in consummation of the purchase; and 2) was not, by its subject matter, part or parcel of the purchasing documents or transaction. The credit application is merely an authorization to investigate respondents' credit score and employment information and present that information to various finance companies to

13

determine which company may wish to extend financing to them. The credit application is not part of the purchase transaction documentation and governs an entirely different subject matter—the credit investigation and approval process. There is nothing about a simple credit application which ostensibly purports to govern any of the terms of the ultimate vehicle purchase or financing. *See Lowe*, 235 So.3d at 1027 ("'The test for determining arbitrability of a particular claim under a broad arbitration provision is whether a "significant relationship" exists between the claim and the agreement containing the arbitration clause, regardless of the legal label attached to the dispute.'" (quoting *Murphy v. Courtesy Ford, LLC*, 944 So.2d 1131, 1133 (Fla. Dist. Ct. App. 2006)); *cf. Ashland Oil, Inc. v. Donahue*, 159 W. Va. 463, 469, 223 S.E.2d 433, 437 (1976) (finding lease agreement and dealer contract sufficiently related where both "deal with the operation of a gasoline station at identified premises[;] provide for the same initial term and automatic extensions from year to year; [] provide for the sale and delivery of gasoline; [] provide for the conduct of the business on the part of Donahue with skill and diligence").

In this regard, the *McDaniel* case is instructive. In *McDaniel*, the Court examined an insurance policy and subsequent release to determine whether their terms were conflicting and which document governed the parties' responsibilities as pertained to preserving the insurance company's subrogation rights. The Court determined that the policy and release, while plainly related to each other, were "two separate and distinct contracts" by virtue of the "difference in the subject matter addressed in each document[.]" *Id*. at 278-79, 503 S.E.2d at 846-47. Acknowledging the relationship between the two

14

documents, the Court stated that "absent the existence of the automobile insurance policy, there would have been no reason for Aetna to negotiate the release." *Id*. at 279, 503 S.E.2d at 847. However, it found that "this fact alone [is] insufficient upon which to find that the two documents are so closely related that they become a single contract." *Id*. While the insurance contract may have given rise to the coverage for the loss described in the release, the release itself purported to govern the terms of a "particular known loss." *Id*.

Similarly, here, while the credit application may have been a common precursor to a vehicle purchase governed by a RISC, the completely different subject matter of the two documents and lack of contemporaneous execution—which also demonstrates their distinct purposes—are insufficient to view them as part of a single transaction. Therefore, the RISC and its merger clause—stating that it represents the "entire agreement" between the parties as pertains to the purchase of the vehicle—must govern. The RISC's failure to include an arbitration provision or incorporate by reference any prior arbitration agreement, therefore, is fatal to petitioners' demand for arbitration.

Petitioners, however, maintain that the arbitration agreement language in the credit application specifically extended the requirement to arbitrate to any subsequently-executed RISC and therefore serves to effectively "reach out" and incorporate itself into the RISC. As indicated, the arbitration provision in the credit application states that it applies to "any installment sale contract or lease agreement, or any resulting transaction or relationship . . . ." This language, however, is fully at odds with the purpose of the merger

clause contained in the RISC:  to merge any preexisting agreements into one, final agreement governed exclusively by the terms contained within the four corners of the RISC.  To make the preexisting arbitration agreement applicable to the RISC, the opposite must have occurred:  the final, "entire" agreement—the RISC—should have incorporated the prior arbitration agreement by reference.  *Cf. Art's Flower Shop v. Chesapeake & Potomac Tel. Co.*, 186 W.Va. 613, 615, 413 S.E.2d 670, 672 (1991) (finding prior contract incorporated by reference where subsequent contract specifically stated "'all other terms and conditions to remain as previously signed'").  Other courts have similarly rejected this attempted "reverse incorporation."  *See Salvagne*, 794 F. Supp.2d at 833 ("[T]he RISC must clearly reach out and incorporate the [prior] Spot Delivery Agreement, not the other way around."); *Duval Motors*, 73 So.3d at 269 ([T]he important inquiry is whether the [final] RISC incorporates the [prior Buyer's Order], not whether the [Buyer's Order] incorporates the RISC.").[8]

Finally, we dispense with petitioners' contention that, since Crossroads was the original signatory to the RISC, petitioners' rights under the credit application arbitration

---

[8] Further, the unlimited scope of such an attempted "reverse incorporation" leads to an absurd, theoretical possibility:  that respondents would be obligated to arbitrate any claim arising out of any subsequent transaction or relationship regardless of how attenuated in time or subject matter.  This untenable reading, coupled with tedious and frequently indecipherable competing documents foisted upon vehicle purchasers make Justice McDonald's sardonic comment particularly apt:  "[A] lay person interested in buying a [] car would be well advised to bring along a lawyer, a magnifying glass, and perhaps an English major, to decipher [sales contracts]."  *Antwerpen Motorcars*, 117 A.3d at 29 (McDonald, J., concurring).

agreement cannot be affected by the terms of what is essentially a third-party contract between respondents and Crossroads. As assignee of the RISC, petitioner TD Auto Finance stands in the shoes of Crossroads. Therefore, for purposes of examining the formation, validity, and enforceability of the RISC and defenses thereto, the fact that petitioner TD Auto Finance is not an original signatory, but rather an assignee, is of no consequence. As is universally-recognized:

> [A]n assignee acquires no greater right than that possessed by his assignor, and he stands in his shoes; and an assignee takes subject to all defenses and all equities which could have been set up against an instrument in the hands of an assignor at the time of the assignment.

Syl. Pt. 10, *Lightner v. Lightner*, 146 W.Va. 1024, 124 S.E.2d 355 (1962). Therefore,

> "'[t]he assignee is subject to any defenses that would have been good against the [assignor]; the assignee cannot recover more than the assignor could recover; and *the assignee never stands in a better position than the assignor*.'" "[A]n assignee gains nothing more, and acquires no greater interest than had his assignor." In other words, "the common law puts the assignee in the assignor's shoes, whatever the shoe size."

> \*\*\*

> *Corbin on Contracts* states, "[t]he essential purpose of the principle is to protect the obligor, the party who must perform the correlative duty of the assigned right," so that the risk to the obligor is not materially enlarged over the risk created by its agreement with the assignor. In other words, *the purpose behind the rule is that an assignee has rights and liabilities identical to those of its assignor.*

17

*Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1003-04 (Utah 2010) (citations

omitted) (emphasis added).[9]  Therefore, to the extent that Crossroads could not have

compelled respondents to arbitrate their claims due to the absence of such an agreement in

the RISC, neither can petitioners.  Accordingly, we conclude that the arbitration provisions

in the credit application did not survive the merger clause of the RISC, thereby nullifying

respondents' obligation to arbitrate their claims against petitioners.

## IV.  CONCLUSION

For the reasons set forth hereinabove, we affirm the June 8, 2018, order of

the Circuit Court of Mercer County, West Virginia, denying petitioners' motion to compel

arbitration.

Affirmed.

---

[9] In a similar vein, while not argued by respondents, we further find that petitioners are likely estopped from disavowing the merger clause contained in the RISC.  When respondents defaulted on their vehicle loan, petitioners sought to collect the debt presumably pursuant to the terms of the RISC, as its assignee.  Petitioners cannot avail themselves of the terms of the RISC for purposes of collection, but disavow the applicability of certain other of its terms:  "[A] party may be estopped from asserting [defenses which] preclude[] enforcement of the contract's [provisions] when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000).  *See Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 85 (3d Cir. 2010) (noting estoppel prevents party "from 'cherry-picking' the provisions of a contract that it will benefit from and ignoring other provisions that don't benefit it or that it would prefer not to be governed by"); *see also, e.g. Lowe*, 235 So.3d at 1027 (observing that "the essential terms of the contract for the [] claim Ms. Lowe raises" were contained in arbitration-requiring Purchase Agreement).