850 So.2d 570 (2003)
Jack Georg GUSTAVSSON, Appellant,
v.
WASHINGTON MUTUAL BANK, F.A., Appellee.
No. 4D02-1313.
District Court of Appeal of Florida, Fourth District.
June 4, 2003.
Rehearing Denied August 12, 2003.
*571 Theresa L. Fiset of The Yerrid Law Firm and Marsha Rydberg of the Rydberg Law Firm, P.A., Tampa, for appellant.
Martin J. Alexander, Scott B. Newman, Debra L. Lowman, and Jason Lazarus of Holland & Knight, LLP, West Palm Beach for appellee.
HARNAGE, HENRY H., Associate Judge.
Jack Georg Gustavsson [Gustavsson] appeals an order granting Washington Mutual Bank, F.A.'s motion to compel arbitration, which order stayed the trial proceedings in circuit court.
Gustavsson contends the trial court erred in finding he had agreed to terms found in the Bank's Disclosure statement, which included an arbitration agreement when he never received either the reverse side of the Signature Card and Agreement, or the Disclosure statement. We agree and reverse, finding no enforceable agreement to arbitrate existed between the parties.[1]

BACKGROUND
Relevant Facts
In November 1996, Gustavsson allegedly opened three accounts in his own name: Account A (the only account of the three referenced on the Signature Card and Agreement); Account B (which account Gustavsson claims was opened without his knowledge or consent); and Account C (funded within weeks by an approximate sum of $367,000). Gustavsson requested that all of his account documents and statements be held at the Bank.
On November 14, 1996, Gustavsson wired approximately $230,000 to fund Account A. The next day, a vice-president of the Bank sent to him in Sweden a two-page facsimile including the front side of the Bank's Signature Card and Agreement for Account A, and a Declaration of Non-residency form. The Bank did not include a copy of either the reverse side of the Signature Card and Agreement (which included the reference to the Disclosure statement) or the Disclosure statement itself. Gustavsson signed the Signature Card and Agreement and returned it and the Declaration of Non-Residency to the Bank, with a cover letter inviting the Bank to contact him for "any questions."
Three years later in late 1999, he sought to withdraw money from the Bank. Instead of finding a balance of $658,000, he found $200. Gustavsson alleged that the Bank had improperly funneled money from his two accounts into the account of an individual who was a mutual friend of his and the Bank's vice-president.

The Process
On November 13, 2000, Gustavsson sued Washington Mutual, as successor of its predecessor federal savings bank, Great *572 Western Bank [collectively, the Bank], alleging that the Bank had unlawfully and without his authorization transferred approximately $658,000 out of his accounts at the Bank. He alleged eleven common law and statutory causes of action.[2]
On July 3, 2001 Gustavsson served an Amended Complaint and demanded a jury trial. On November 30, 2001, counsel for the successor bank first discovered the arbitration provision contained in the General Terms and Conditions Disclosure [Disclosure statement] of the predecessor bank. On December 3, 2001, the Bank filed a motion to compel arbitration and to stay the proceedings.
The Bank's belated motion claimed that an arbitration provision governed disputes about Gustavsson's accounts. It maintained that Gustavsson received and signed an Account Signature Card upon opening Account A in 1996. Located on the front side of the Signature Card was the following language:
EACH PERSON SIGNING ABOVE HAS READ AND AGREES TO THE TERMS AND CONDITIONS AS LISTED ON THE BACK OF THIS SIGNATURE CARD
* * *
SEE REVERSE FOR IMPORTANT INFORMATION
The "IMPORTANT INFORMATION" on the reverse side of an original of the Bank's Signature Card includes no mention of arbitration but, instead, incorporates by reference the Bank's detailed Disclosure statement. The latter does indeed contain an arbitration provision (within "Dispute Resolution Program") and provides:
If you and Great Western [the Bank] are unable to solve any dispute in an informal manner, either you or Great Western may request that the dispute be resolved by binding arbitration or judicial reference, depending on the type of dispute, as provided herein.... The dispute will be arbitrated by the American Arbitration Association (AAA), pursuant to the AAA's Commercial Rules.... The Federal Arbitration Act shall apply.
It is uncontroverted that Gustavsson never received either the reverse side of the Signature Card and Agreement or the Disclosure statement, until they were revealed five years later to the trial judge. Hence he maintains he did not enter into an agreement to arbitrate.
The trial judge found at a March 8, 2002, non-evidentiary hearing that the parties had entered into a valid agreement to arbitrate, concluding that "[s]ince the disclosure statement is specifically referenced in the Signature Card and Agreement, it becomes part of that agreement and the terms of the Disclosure Agreement are binding on the parties."
Pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(iv), Gustavsson has appealed the trial court's decision.

ANALYSIS
We begin by making it clear that our decision in this matter does not disturb the strong policy favoring arbitration in those circumstances when both parties agree in writing to arbitrate, and the scope of the arbitration provision is in dispute.[3]
*573 The United States Supreme Court addressed this policy consideration in First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), instructing that "when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is `clear and unmistakable' evidence that they did so." 514 U.S. at 944, 115 S.Ct. 1920. Consequently, the Supreme Court stated "the law treats silence or ambiguity about the question as to `who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question of `whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'for in respect to this latter question the law reverses the presumption."
The clear issue before us is not ambiguity over the scope of the arbitration agreement, but rather whether an agreement to arbitrate exists at all.
The cases suggested by the Bank for its contention do not concern parties attempting to enforce a contract provision found within an unsupplied document, which provision was incorporated by reference on the reverse side of a form which, also, was not supplied. If the Bank had listed on the reverse side what terms and conditions were incorporated by the Disclosure statement, it then would be necessary to determine whether the listed terms gave Gustavsson sufficient notice of the existence of the additional conditions.
While numerous cases have addressed the adequacy of notice given by words on the front of a document, see, e.g., Rudy's Glass Constr. Co. v. E.F. Johnson Co., 404 So.2d 1087 (Fla. 3d DCA 1981) (holding that language appearing on the front in all capital letters was a sufficient and conspicuous reference to terms included on the back), such cases have focused on documents where other terms and conditions were actually listed on the reverse side or, at least, were included in another document supplied to the other party at the time of the making of the contract.
The Florida Supreme Court has addressed contracts which expressly refer within their own writings to other documents. In OBS Co. v. Pace Construction Corp., 558 So.2d 404, 406 (Fla.1990), the Court held that "[I]t is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describesanother document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." (Emphasis added.)
The only signed document in this record neither identifies and describes, nor in any way expresses an intention that Gustavsson should be bound by a twice removed collateral document referring to arbitration.
Additionally, the existence of conspicuous terms providing for other terms elsewhere is not all that is required to make such other terms binding. The terms must actually be provided. Cf., 188 LLC v. Trinity Indus., Inc., 300 F.3d 730 (7th Cir.2002)(holding as a matter of law that an additional document was not incorporated into the parties' sales contract when a letter of acceptance incorporated by reference a Term Sheet, which itself incorporated an additional document, and the seller [offeror] never provided any *574 copy of his term sheet that contained the additional document on its reverse side). Here, there was no mutual assent, either express or implied, to the arbitration agreement found within the Disclosure statement. See, e.g., Gibson v. Courtois, 539 So.2d 459, 460 (Fla.1989)(Mutual assent to the essential terms of a contract is an absolute condition precedent for the contract's formation and the provisions' existence).
We cannot agree that a Signature Card which provides "see reverse for important information"where that reverse side is blankcan be said to be expressly referring and sufficiently describing another document. While the words do expressly refer to a place to find additional terms ["reverse side"], they do not sufficiently: (1) describe the type of terms or conditions that Gustavsson may find; (2) expressly refer to another document; or, (3) even describe another document, at all.
Finally, Gustavsson did not sign any document containing language that he acknowledged receipt of any other documents. The only portion of the Signature Card and Agreement that acknowledges any other document is on the back portion, which he never received.

CONCLUSION
This cause is but another example that the offeror is still the master of the offer. We therefore conclude that the Bank made an offer through its Signature and Agreement Card, and that Gustavsson accepted. Since the Bank did not refer to arbitration, or expressly refer and sufficiently describe another document containing an arbitration requirement, it cannot now ask us to put in a term and condition when it failed to do so and to which Gustavsson did not assent.
As the lower court erred, we reverse and remand so that the matter may be reset on the trial court's docket.
GUNTHER and WARNER, JJ., concur.
NOTES
[1] Deciding as we do, we need not reach the issues of the Bank's waiver, or whether the claims are arbitrable.
[2] Fraud in the inducement, breach of contract, money had and received, Florida Unfair & Deceptive Trade Practices, conversion, civil theft, breach of fiduciary duty, negligence, gross negligence, and violations of sections 670.204 and 674.401, Florida Statutes.
[3] Here the lower court found that the Federal Arbitration Act (FAA) strongly favors a policy of enforcement of arbitration agreements citing Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). See also Wylie v. Investment Mgmt. and Research Inc., 629 So.2d 898 (Fla. 4th DCA 1993) (en banc).