906 So.2d 325 (2005)
Ronald Wayne HOUCHINS and Martha Romero-Huertas, Appellants,
v.
KING MOTOR COMPANY OF FORT LAUDERDALE, INC., Appellee.
No. 4D04-670.
District Court of Appeal of Florida, Fourth District.
July 6, 2005.
*326 Jerard C. Heller, Fort Lauderdale, for appellants.
Ricardo A. Reyes of Tobin & Reyes, P.A., Boca Raton, and Nancy W. Gregoire of Bunnell, Woulfe, Kirschbaum, Keller, McIntyre & Gregoire, P.A., Fort Lauderdale, for appellee.
WARNER, J.
Appellants challenge a non-final order granting King Motor Company's motion to compel arbitration. They raise several issues but the essential issues involve: first, whether King waived its right to arbitrate by filing a motion to dismiss for failure to state a cause of action prior to filing the demand for arbitration; and second, whether they were entitled to an evidentiary hearing to determine whether a valid arbitration agreement existed. We affirm on the first issue, finding that the filing of the motion to dismiss did not constitute a waiver of arbitration and the allegations in appellants' complaint show that they entered into an arbitration agreement. We reverse on the second issue finding that there was a dispute as to the validity of the arbitration agreement that King relied on in its motion to compel arbitration.
According to the allegations of the complaint, Ronald Houchins and his wife, Martha Romero-Huertas, went to King Motor Company to buy a new car. After finding the car they wanted, the salesman presented Houchins and Romero-Huertas with a "Buyer's Order," which listed them both as buyers. The front of the Buyer's Order, which is signed by Romero-Huertas as the "Buyer," Houchins as the "Co-Buyer," and one of King's managers, states in part:
This Buyer's Order, along with all documents in the "Delivery Package" shall set forth the entire agreement between *327 the parties and shall supersede all other agreements between the parties (collectively, the Buyer's Order). . . . On a credit transaction the purchaser(s) offer is not accepted until (A) signed by a sales manager, (B) signed and acceptable by a Bank Lease Company or Finance Company, and (C) purchaser(s) and dealer have signed an installment sales contract. Further in a credit transaction the parties acknowledge and agree that all terms of said Installment sales contract along with any addendum or attachments thereto, shall be and hereby are, incorporated into this Buyer's Order by this reference.
Additionally, the back of the Buyer's Order contains several provisions, including paragraph eleven, which states, in part, "All disputes or claims between the parties shall be resolved by arbitration pursuant to the Arbitration Agreement executed by the parties."
In addition to signing the Buyer's Order, Houchins and Romero-Huertas executed an Installment Contract. The contract covered the balance of the amount due after application of the value of their used car trade-in. It reflected an annual percentage rate of interest of 5.9%.
Simultaneous with these documents, Romero-Huertas signed a "Delivery Package." At the bottom of the delivery package is an Arbitration Agreement that states, in part:
Buyer/lessee and dealer agree that all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale/lease, or financing of the vehicle, the terms and provision of the sale, lease, or financing agreements, the arrangement for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as incident to the sale, lease or financing of the vehicle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease, or financing shall be settled by binding arbitration, conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1 et. seq. and according to the Commercial Arbitration Rules of the American Arbitration Association. . . . BUYER/LESSEE AND DEALER UNDERSTAND THAT THEY ARE AGREEING TO RESOLVE THE DISPUTES BETWEEN THEM DESCRIBED ABOVE BY BINDING ARBITRATION, RATHER THAN BY LITIGATION IN ANY COURT.
King informed Houchins and Romero-Huertas that they had been approved for the 5.9% APR financing. In reliance on this statement, Houchins and Romero-Huertas tendered their used car to King and accepted delivery of the new vehicle.
Three weeks later, King called the couple and told them that they needed to return to King's premises to sign additional paperwork. Upon arriving at King's dealership, King informed them that they were disapproved for financing at the 5.9% APR, but that they would be approved at 15.5% APR. Houchins and Romero-Huertas declined this offer and demanded their trade-in be returned to them in exchange for their new vehicle. King told them that their trade-in had been sold and failed to offer Houchins and Romero-Huertas any compensation for their sold trade-in. King also informed Houchins and Romero-Huertas that their new 2002 car would be repossessed unless they signed a new Buyer's Order, with a reduced balance of $20,955.10. As they alleged in their complaint, having no alternative, they signed a new Buyer's Order and Installment Contract.
*328 Displeased with the predicament that King had placed them in, they filed a complaint against King for violation of the Florida Deceptive and Unfair Trade Practices Act, breach of contract, violation of the Credit Services Organization Act, fraud in the inducement, and violations of the Motor Vehicle Retail Sales Finance Act.
King filed a motion to dismiss the complaint for failure to state a cause of action, on which the court scheduled a hearing. On the same day as the hearing, King also served a motion to compel arbitration. The court held the hearing and granted the motion to dismiss on several of the counts, some with leave to amend, and denied others. While the period to amend the complaint was pending, King scheduled a hearing on its motion to compel arbitration.
At the hearing on December 23, King asserted that the "Arbitration Agreement" was valid and its motion to dismiss did not waive its right to arbitrate. Houchins and Romero-Huertas countered that arbitration had been waived because of King's motion to dismiss. Additionally, they argued that there was no complaint pending because they had not filed their new complaint, and therefore this hearing was premature as the complaint may not include anything that would fall under the arbitration provision. They also asserted that because only Romero-Huertas, and not Houchins, signed the Arbitration Agreement, Houchins could not be forced to arbitrate. Finally, they argued that no contract was ever created because the condition of obtaining financing was not satisfied. The trial court granted the motion to compel arbitration, prompting this appeal.
Houchins and Romero-Huertas first argue that King waived the right to compel arbitration by filing its motion to dismiss and participating in the litigation. A party who actively participates in a lawsuit waives the right to later insist on its right to arbitration. Doctors Assocs., Inc. v. Thomas, 898 So.2d 159, 162 (Fla. 4th DCA 2005). However, the filing of a motion to dismiss for failure to state a cause of action does not constitute "active participation" in the lawsuit to constitute a waiver. See Hirschfeld v. Crescent Heights, X, Inc., 707 So.2d 955, 956 (Fla. 3d DCA 1998); Prudential-Bache Sec. v. Pauler, 488 So.2d 894, 895 (Fla. 2d DCA 1986); Graham Contracting, Inc. v. Flagler County, 444 So.2d 971, 973 (Fla. 5th DCA 1983).
In Hirschfeld, for example, the defendant filed a motion to dismiss for failure to state a cause of action, which the court denied and ordered the defendant to respond. It responded by filing a motion to dismiss and compel arbitration. The court held that the first motion to dismiss was simply directed at the technical aspects of the complaint and was not active participation. The second motion to dismiss was tantamount to a motion to compel arbitration. Similarly, in Prudential-Bache the defendant first filed a motion to dismiss directed to the deficiencies in the complaint. And in Graham Contracting, Inc., the court also held that the filing of a motion to dismiss for failure to state a cause of action, without more, was insufficient to constitute a waiver of the right to arbitrate under the contractual provisions. We likewise conclude that the filing and hearing on the motion to dismiss directed to the sufficiency of the allegations of the complaint did not constitute a waiver of the right to arbitrate.
In opposing the motion to compel arbitration, Houchins and Romero-Huertas contend that the arbitration agreement was not valid, because the contract upon which it was based never came into existence, or at least a dispute arose as to its *329 validity. The motion to compel arbitration attached a copy of the arbitration agreement contained in the first set of contracts between the parties. Admittedly, the first contract fell through when the couple was not approved for financing at the lower APR. They then executed a second contract. That agreement was not before the court at the time that the motion was ruled on. If it was the same as the first agreement, then by its terms it superceded the prior agreement and would be binding upon the parties.
Because the first agreement may have failed on the financing contingency and the second agreement was not before the court, a question existed as to the validity of the arbitration agreement relied on by King. In Jalis Construction, Inc. v. Mintz, 724 So.2d 1254 (Fla. 4th DCA 1999), we held that where a party opposing arbitration asserts that the arbitration agreement is unenforceable, the trial court errs in deciding the motion before making a determination as to whether a valid arbitration agreement exists. Section 682.03(1), Florida Statutes provides:
A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application.
The court in Jalis Construction, Inc. determined that the language in this statute is "mandatory." 724 So.2d at 1255. The court relied on Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed, 425 So.2d 127 (Fla. 4th DCA 1982). In Merrill Lynch, this court stated, "[I]f the court finds disputed issues regarding the making of the agreement or the failure, neglect, or refusal to perform the same, the court is mandated to `summarily hear and determine the issue. . . .' In our view, the latter requirement contemplates an expedited evidentiary hearing." 425 So.2d at 129 (quoting section 682.03(1), Fla. Stat.). See also Epstein v. Precision Response Corp., 883 So.2d 377 (Fla. 4th DCA 2004) (holding that corporate officer's challenge to application of arbitration agreement to which he was a non-signatory required the court to conduct an evidentiary hearing to make findings of fact prior to entering order on motion to compel arbitration). Where the evidence is undisputed, no evidentiary hearing is necessary. However, here the evidence was disputed as to the validity of the first set of agreements that King relied on to assert its arbitration privilege, and therefore an evidentiary hearing was required.
We therefore reverse and remand for further proceedings. We do not foreclose King's right to assert arbitration on the second set of contracts and for the court to determine King's right to arbitrate this entire dispute thereunder. We find no merit to the other contentions raised by appellants.
KLEIN and TAYLOR, JJ., concur.