920 So.2d 1286 (2006)
AFFINITY INTERNET, INC., d/b/a SkyNetWEB, Appellant,
v.
CONSOLIDATED CREDIT COUNSELING SERVICES, INC., a Florida corporation, Appellee.
No. 4D05-1193.
District Court of Appeal of Florida, Fourth District.
March 1, 2006.
*1287 Douglas E. Ede of Salas, Ede, Peterson & Lage, LLC, South Miami, for appellant.
Todd A. Armbruster of Moskowitz, Mandell, Salim & Simowitz, P.A., Fort Lauderdale, for appellee.
SHAHOOD, J.
This is an appeal from an order denying appellant's motion to compel arbitration. The issue before us is whether the trial court erred in denying appellant's motion to compel arbitration without an evidentiary hearing to determine whether the contract contained a valid agreement to arbitrate. We hold the trial court did not err and affirm the order of the trial court.
Consolidated Credit Counseling Services, Inc. (Consolidated) and Affinity Internet, Inc., d/b/a/ SkyNetWEB (Affinity) entered into a contract pursuant to which Affinity was to provide computer and web hosting internet services to Consolidated. Some time later, Consolidated filed a complaint against Affinity alleging breach of contract, unjust enrichment, fraud in the inducement, and Violation of Florida's Deceptive and Unfair Trade Practices Act. Affinity responded with a motion to compel arbitration and to stay discovery and further proceedings in the circuit court, asserting that all of Consolidated's claims arose out of the contractual relationship and were, therefore, subject to arbitration.
Consolidated opposed the motion, arguing that the contract between the parties did not contain an arbitration clause and that any collateral documents relied upon by Affinity to show otherwise were not a part of the contract.
The contract between the parties stated: "This contract is subject to all of SkyNetWEB's terms, conditions, user and acceptable use policies located at http://www.skynetweb. com/company/legal/legal.php." A copy of the document was attached to Consolidated's Motion to Arbitrate. Paragraph seventeen of the User Agreement states that "[a]ny controversy or claim arising out of, relating to or in connection with this Agreement, or the breach thereof, shall be subject to arbitration administered by the American Arbitration Association." Affinity's vice-president stated in her affidavit that the contract expressly incorporated the user agreement at http://www.skynetweb. com/company/legal/ user  agreement.php.
At the hearing on the motion, Consolidated argued that there was no arbitration clause in the contract and, even if the collateral document were sufficient to impose an obligation to arbitrate, the website for the user agreement, which was listed in the contract, was different from the website given by the company's representative in her affidavit. Thus, counsel argued that Affinity had not even established that the user agreement was at the website listed in the contract. Finally, counsel argued that the user agreement was never signed by Consolidated and no copy of the agreement was ever given to Consolidated. The court agreed that there was no valid, written agreement to arbitrate in the contract and that the collateral document allegedly containing the arbitration clause was "neither expressly referred to nor sufficiently described by the Contract."
The issue in this case is not the scope of the arbitration agreement, but rather, whether a written agreement to arbitrate exists at all. See generally Seifert v. U.S. Home Corp., 750 So.2d 633, 636 *1288 (Fla.1999) (elements to consider in determining whether to compel arbitration are "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.") The intent of the parties is determinative of whether an agreement to arbitrate exists. Id. at 636.
The contract in this case does not contain an express agreement to arbitrate. It contains only a statement that the contract is "subject to all of SkyNetWEB's terms, conditions, user and acceptable use policies located" which are found at a stated website. The arbitration provision is contained in the user agreement. No printed version of the policies allegedly located at that website was attached to the contract.
The doctrine of incorporation "requires that there must be some expression in the incorporating document ... of an intention to be bound by the collateral document.... A mere reference to another document is not sufficient to incorporate that other document into a contract, particularly where the incorporating document makes no specific reference that it is `subject to' the collateral document." Temple Emanu-El of Greater Fort Lauderdale v. Tremarco Indus., Inc., 705 So.2d 983, 984 (Fla. 4th DCA 1998) (citing Kantner v. Boutin, 624 So.2d 779 (Fla. 4th DCA 1993)). While the contract in this case does state that it is subject to the collateral document, that simple statement, with nothing more, is insufficient to bind Consolidated to arbitrate.
In St. Augustine Pools, Inc. v. James M. Barker, Inc., 687 So.2d 957 (Fla. 5th DCA 1997), the court considered a similar issue in the context of a contract between a general contractor ("GC") and a subcontractor. When a dispute arose between the two, the GC sought to enforce an arbitration provision from the contract between the GC and the property owner. The basis for the GC's position was that the contract between the GC and the subcontractor stated that the agreement was "subject to the General Contract between the Owner and General Contractor. Subcontractor acknowledges that he is familiar with the General Contract and the General Conditions thereof and agrees to comply with all applicable provisions thereof." Id. at 958. The Fifth District analyzed the issue as follows:
The term "subject to" means "liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable." BLACK'S LAW DICTIONARY 1425 (6th ed. 1990); See also, Homan v. Employers Reins. Corp., 345 Mo. 650, 136 S.W.2d 289 (1939). The words "subject to" "usually indicate a condition to one party's duty of performance and not a promise by the other." Burgess Constr. Co. v. M. Morrin & Son Co., Inc., 526 F.2d 108, 113 (10th Cir.1975), cert. den., 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976) (citing AM.JUR.2D Contracts § 320 (1964)). Applying these definitions to the subcontractor agreement it is clear that the intent of the parties was to not incorporate the arbitration language of the general contract into the subcontract.
Id.
Similarly, in this case, the contract contains no clear language evidencing an intention of the parties to incorporate the terms of the collateral document. Not only was the collateral document not attached to the contract, but Consolidated also was never at any time subsequent to the signing of the contract given a copy of the collateral document or the information contained therein. When a contract refers to another document, it must not only expressly refer to the document, but it must also sufficiently describe the document or *1289 "so much of it as is referred to, is to be interpreted as part of the writing." Id. at 573 (quoting OBS Co. v. Pace Constr. Corp., 558 So.2d 404, 406 (Fla.1990)). Under these circumstances, Consolidated could not be obligated to arbitrate. See Gustavsson v. Washington Mut. Bank, F.A., 850 So.2d 570 (Fla. 4th DCA 2003) (holding that a bank customer was not bound to arbitrate where the signature card that was signed referenced a collateral document which contained an arbitration clause, but the bank never sent the customer a copy of the collateral document).
We find no error in the trial court's failure to conduct an evidentiary hearing. No evidentiary hearing was required because no factual issues were in dispute and the issue of whether a valid arbitration agreement existed was a matter of law. See Houchins v. King Motor Co. of Fort Lauderdale, Inc., 906 So.2d 325, 329 (Fla. 4th DCA 2005).
Affirmed.
POLEN and KLEIN, JJ., concur.