GROSS, C.J.
 

 This is BGT Group, Inc.’s appeal from a non-final order denying its motion to compel arbitration of its dispute with Trade-winds Engine Services, LLC. We affirm the order, because the contract documents failed to sufficiently describe the collateral document that contained an arbitration clause, so that it failed to incorporate it by reference into the sales contract.
 

 This dispute arises from BGT’s sale of used gas turbine parts for power generation to Tradewinds. BGT claims that Tradewinds breached the sales contract by failing to make the final payment; Tradewinds contends that BGT falsely represented the condition of the parts. In January, 2009, BGT filed a demand for arbitration. A month later, Tradewinds filed a complaint for breach of contract, subsequently adding counts for fraud. BGT moved to compel arbitration. Trade-winds moved to stay arbitration. The circuit court held an evidentiary hearing and we recount the evidence in the light most favorable to Tradewinds, the prevailing party below.
 
 [1]
 

 After being approached by Tradewinds’ purchase manager, the president of BGT issued a quote for certain parts. In the “REMARKS” section, toward the bottom of the quote, was this language: “ALL QUOTATIONS, INVOICES AND ORDERS ARE SUBJECT TO THE ATTACHED BGT TERMS AND CONDITIONS.” No terms and conditions were attached to the quote.
 

 Tradewinds’ purchase manager reviewed the quote but did not request a copy of the
 
 *1194
 
 “terms and conditions,” because the reference to it in the quote was to “something that didn’t exist.” Tradewinds responded with a purchase order for the parts. BGT sent back an invoice. At the top of the invoice, in a section containing general information for the transaction, was the following notation: “TERMS: SEE REMARKS.” In the “REMARKS” section of the invoice was the following:
 

 ALL ORDERS ARE SUBJECT TO ATTACHED BGT TERMS AND CONDITIONS.
 

 TERMS: 50% DUE UPON READINESS TO SHIP, 25% DUE NET 30, 25% DUE NET 60. ANY ITEMS DEEMED TO BE NOT REPAIRABLE SHALL BE DEDUCTED UPON RETURN TO BGT.
 

 PER ATTACHED “TRADEWINDS PO P35001594 S/N MANIFEST.”
 

 No terms and conditions were attached. Tradewinds’ representatives did not ask to see them.
 

 Tradewinds picked the parts up at BGT. Later, Tradewinds discovered that BGT had allegedly misrepresented the condition of the parts. Tradewinds tried to work out the dispute with BGT, but failed. It did not make the final payment.
 

 In October 2008, BGT sent Tradewinds an e-mail to which it attached a letter demanding the final payment, as well as some “terms and conditions.” Section 19 of BGT’s five-page General Terms & Conditions of Sale of Equipment provided, “Any controversy or claim arising out of or relating to this contract, or breach thereof, shall be settled by arbitration in accordance with the commercial rules of the American Arbitration Association.... ” This was the first time anyone at Trade-winds had seen any of BGT’s terms and conditions.
 

 Without making any factual findings, the circuit court denied BGT’s motion to compel arbitration and granted Tradewinds’ motion to stay arbitration.
 

 This court reviews the trial court’s order denying arbitration
 
 de novo. See Powertel, Inc. v. Bexley,
 
 743 So.2d 570, 573 (Fla. 1st DCA 1999). “[T]here are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived.”
 
 Seifert v. U.S. Home Corp., 750
 
 So.2d 633, 636 (Fla.1999) (citation omitted). Here, BGT and Tradewinds dispute only the first element — whether a valid agreement to arbitrate exists between them.
 

 The central issue is whether BGT’s quote and purchase order incorporated by reference its “TERMS AND CONDITIONS.”
 

 To incorporate by reference a collateral document, the incorporating document must (1) specifically provide “ ‘that it is subject to the incorporated [collateral] document’ ” and (2) the collateral document to be incorporated must be “ ‘sufficiently described or referred to in the incorporating agreement’ ” so that the intent of the parties may be ascertained.
 
 Kantner v. Boutin,
 
 624 So.2d 779, 781 (Fla. 4th DCA 1993) (quoting
 
 Hurwitz v. C.G.J. Corp.,
 
 168 So.2d 84, 87 (Fla. 3d DCA 1964)). The Supreme Court set forth the second requirement for incorporation by reference in
 
 OBS Co. v. Pace Construction Corp.,
 
 558 So.2d 404, 406 (Fla.1990): “It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing.”
 

 The quote and purchase order in this case did not sufficiently describe the
 
 *1195
 
 “terms and conditions,” so it cannot objectively be said that Tradewinds agreed to be bound by them. Additionally, BGT failed to provide the terms and conditions during the negotiating process; thus, the sales contract was formed without Trade-winds ever having seen them. The “terms and conditions” were not provided until a contract dispute had arisen. A reasonable view of this “contract” is that BGT, as the drafter of the documents, did not intend to incorporate any “terms and conditions” where it did not provide a specific description of them or attach them to the quote and purchase order.
 

 Here, there was less description of the “terms and conditions” than there was of the document sought to be incorporated in
 
 Affinity Internet, Inc. v. Consolidated Credit Counseling Services, Inc.,
 
 920 So.2d 1286, 1288 (Fla. 4th DCA 2006), where we found a description of a collateral document insufficient to create an incorporation of it by reference. In
 
 Affinity,
 
 a computer service contract stated that the contract was “subject to all of [the service provider’s] terms, conditions, user and acceptable use policies located” at its website.
 
 Id.
 
 at 1287. We held that the reference to the website as the repository of the collateral documents insufficiently described them so that they could be interpreted as a part of the service contract.
 
 Id.
 
 at 1288;
 
 see also Gustavsson v. Washington Mutual Bank,
 
 850 So.2d 570 (Fla. 4th DCA 2003) (reversing where the bank’s signature card said “see reverse side for important information,” and the reverse side was blank, so it “did not refer to arbitration, or expressly refer and sufficiently describe another document containing an arbitration agreement”). Because the quote and purchase order in this case provide no information at all about where the “terms and conditions” might be located, the description is even more nebulous than the description in
 
 Affinity.
 

 By contrast, cases finding sufficient description of a collateral document to create an incorporation by reference involve more detailed descriptions of the collateral document, or where the document could be found, than are present in this case. For example, in
 
 Kaye v. Macari Building & Design, Inc.,
 
 967 So.2d 1112, 1113 (Fla. 4th DCA 2007), the collateral document was described as “The American Institute of Architects Documents No. A-201, April 1997 Edition,” an industry standard. And in
 
 Avatar Properties, Inc. v. Greetham,
 
 27 So.3d 764, 766 (Fla. 2d DCA 2010), although a home warranty was not attached to a purchase and sale agreement, “the agreement state[d] that the warranty was available for examination at [the seller’s] offices and, that upon request the warranty would be attached as an exhibit to the purchase and sale agreement.” The buyers initialed that paragraph, signaling an intent that the warranty be incorporated into the main contract.
 
 Id.
 
 at 766-67. During the formation of the contract in this case, Tradewinds expressed no similar intent to incorporate the “terms and conditions.”
 
 See also Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.,
 
 743 So.2d 627, 631-32 (Fla. 1st DCA 1999) (holding that purchase contract for computer software referred to license agreement, indicated where it could be obtained, and provided it with software sealed with the warning, “By opening this packet, you indicate your acceptance of [seller’s] license agreement.”).
 

 For these reasons, we affirm the order of the circuit court denying the motion to compel arbitration.
 

 HAZOURI and CIKLIN, JJ., concur.
 

 [1]
 

 . Whether the terms and conditions were in fact attached to the quote or subsequent documents was hotly contested. Based on the circuit court’s ruling, we are required to assume that BGT did not provide the terms and conditions early in the negotiating process. The circuit court's order ruled on the motions without making any factual findings.