IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

HHH MOTORS, LLP, D/B/A
HYUNDAI OF ORANGE PARK,
F/K/A HHH MOTORS, LTD.,
D/B/A HYUNDAI OF ORANGE
PARK,

CASE NO. 1D13-4397

     Appellant,

v.

JENNY LEE HOLT AND
KRISTOPHER P. HOLT, ON
BEHALF OF THEMSELVES
AND ALL OTHERS
SIMILARLY SITUATED, HA
MOTORS, LLP, D/B/A ACURA
OF ORANGE PARK; HANANIA
OAJ, LLP, D/B/A AUDI OF
JACKSONVILLE AND/OR
AUDI JACKSONVILLE;
HANANIA FOP, LLP, D/B/A
FIAT OF ORANGE PARK;
HANANIA OPM, LLC, D/B/A
ORANGE PARK MITSUBISHI;
HANANIA VOP, LLP, D/B/A
VOLKSWAGEN OF ORANGE
PARK; AND HHH MOTORS 2,
LLP, D/B/A WESTSIDE
HYUNDAI,

     Appellee.

_____/

Opinion filed December 3, 2014.

An appeal from the Circuit Court for Duval County.

Waddell A. Wallace, Judge.

Jon Michael Lindell of Lindell & Farson, P.A.; and Michael J. Korn of Korn & Zehmer, P.A., Jacksonville, for Appellant.

William C. Bielecky of William C. Bielecky, P.A., Tallahassee; Deanna L. Blair of Jacksonville Area Legal Aid, Green Cove Springs; and Brian W. Warwick of Varnell & Warwick, P.A., The Villages, for Appellee.

## ON MOTION FOR REHEARING, WRITTEN OPINION, AND CERTIFICATION

PER CURIAM.

The crux of this dispute is whether the parties agreed in the purchase and financing agreements at issue that this class action lawsuit must be submitted to arbitration or whether it may proceed in court. For the following reasons, we affirm the trial court's determination that the parties did not agree to arbitration. In doing so, we grant the motion for written opinion of HHH Motors, LLP, but deny its motions for rehearing and certification.

On July 28, 2010, HHH Motors, LLP, and two of its customers, Jenny and Kristopher Holt, executed a Retail Purchase Agreement (RPA) for the purchase of a 2007 Dodge Ram. The RPA contained an arbitration clause which stated, in pertinent part:

> Except as specifically excluded in this agreement, purchaser and dealer agree to submit any and all controversies, claims, or disputes arising out of or relating to this agreement and all other agreements executed by purchaser and dealer related to the vehicle purchase transaction, or related to any aspect of the transaction contemplated by

2

this agreement, to binding arbitration. It is the express intent of purchaser and dealer that this arbitration provision applies to all disputes, including contract disputes, tort claims, fraud claims and fraud-in-the-inducement claims, statutory claims, and regulatory claims that would not have arisen but for the vehicle purchase transaction and resulting relationship between purchaser and dealer.

The RPA also contained a clause referring to additional documents, which stated:

You agree to execute additional forms, contracts or other documents prepared in connection with the purchase, those required by the various purchase documents, any retail installment or consumer credit sale contract or those required by federal and/or state law, rule or requirement.

After executing the RPA, the Holts executed a Retail Installment Sales Contract (RISC) to finance the purchase of the vehicle. The RISC, however, did not contain an arbitration clause, but included the following merger clause: "This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it."

The Holts filed a class action lawsuit against HHH Motors in circuit court alleging violations of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) relating to electronic titling/registration filing fees that HHH Motors charges its customers. In response, HHH Motors filed a motion to compel arbitration pursuant to the arbitration clause in the RPA. In a detailed written order, the trial court denied the motion, concluding that when the Holts signed the RISC, which contained the merger clause, a new contract was formed. This meant that the RISC, which did not have an arbitration clause, superseded the RPA, which did.

3

And because the RISC appeared facially complete, no parol evidence could be considered to address alleged ambiguities. The denial prompted this appeal.

The issue presented is whether a valid written agreement to arbitrate exists, a question we review de novo. Duval Motors Co. v. Rogers, 73 So. 3d 261, 264 (Fla. 1st DCA 2011). Under federal and Florida law, a court considers three elements when ruling on a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitral issue exists; and (3) whether the right to arbitration was waived. Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). Absent a valid written agreement to arbitrate, no party may be forced to submit to arbitration. Id. (citing Seaboard Coast Line R.R. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir. 1982) (holding that the federal policy favoring arbitration cannot "stretch a contract beyond the scope originally intended by the parties")). Furthermore, the applicability of the Federal Arbitration Act (FAA), which preempts state law and state public policy concerns, hinges on whether such an agreement exists. McKenzie Check Advance of Florida, LLC v. Betts, 112 So. 3d 1176, 1183 (Fla. 2013) (stating that "to the extent that Florida law would invalidate the class action waiver on this basis, the FAA preempts Florida law under the facts presented here."); Seifert, 750 So. 2d at 636.

HHH Motors argues that all three Seifert elements are met, that its right to arbitrate vested when the RPA was executed regardless of any subsequent

4

agreement entered by the parties; it thereby claims that the FAA governs the parties' dispute arising from the sales agreement. On the other hand, the Holts contend that the trial court had a legally sufficient basis to determine, as a matter of fact, that the first element of the Seifert analysis was not met, i.e., that the parties lacked a valid written agreement to arbitrate. The Holts argue that the facts of this case are similar to those in Duval Motors, in which this Court held that a RISC containing a merger clause was a fully integrated document, such that parol evidence of a retail buyer's order (which contained an arbitration clause) was not admissible to show disputes under contract were subject to arbitration. See Duval Motors, 73 So. 3d at 267. It also held that the retail buyer's order was not a valid change to the RISC. See id. at 269. The Holts also argue that the FAA is not triggered unless the parties first have a valid written agreement to arbitrate, a threshold determination that should be decided by a court, not an arbitrator. They conclude that because the trial court found that no agreement to arbitrate existed, the FAA is inapplicable.

We agree with the well-reasoned analysis of the trial court, which followed a two-step process in its consideration of the applicability of the arbitration clause in the RPA. First, there must be the threshold determination of whether an agreement to arbitrate was formed pursuant to Granite Rock Co. v. International Brotherhood of Teamsters, 561 U.S. 287 (2010). A difference exists, however, between the

validity of a contract and the formation of a contract. <u>Solymar Investments, Ltd. v. Banco Santander S.A.</u>, 672 F.3d 981, 992 (11th Cir. 2012)    ("The issue of the contract's validity is different from the issue whether any agreement . . . was ever concluded.") (quoting <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 444 (2006)). Challenges to the validity of a contract are resolved by the arbitrator, but challenges to formation or existence of a contract are resolved by the court. <u>Granite Rock</u>, 561 U.S. at 296; <u>cf.</u> <u>Dasher v. RBC Bank</u>, 745 F.3d 1111 (11th Cir. 2014) (holding that whether a subsequent agreement entirely supersedes a prior agreement is made under state law, without applying the FAA's presumption). The determination of whether a contract exists is governed by state law, and Florida law permits a court to admit parol evidence to discern the parties' intent if there is an ambiguity in the contract language. <u>Solymar</u>, 672 F.3d at 991. Second, there must be a determination of whether any subsequent challenges are to the whole contract, or just the arbitration clause, pursuant to <u>Prima Paint Corp. v. Flood & Conklin Manufacturing Co.</u>, 338 U.S. 395 (1967).

In this case, the inquiry ended upon the threshold determination by the trial court that no agreement to arbitrate existed pursuant to <u>Granite Rock</u>. No dispute exists that the Holts signed the RPA first. HHH Motors argues that its right to arbitrate vested at that point, regardless of the validity of the RPA or subsequent action by the parties. Indeed, the trial court acknowledged that it would have been

6

binding but for the execution of the RISC, which was entered concurrently. After executing the RPA, the Holts immediately signed the RISC which stated, in part, that "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract." Under the circumstances, the trial court concluded that the RISC and its merger clause was sufficiently unequivocal to render the RPA's arbitration clause nugatory. Our holding in Duval Motors is persuasive on this point and supports the conclusion that no agreement to arbitrate was formed. While HHH Motors correctly notes that the fact pattern is somewhat different, the issue was very similar: whether the merger clause of the RISC precluded consideration of the retail buyer's order. In Duval Motors, this Court determined that the plain language of the RISC was clear and unambiguous, so parol evidence of the arbitration clause contained in the retail buyer's order could not be considered. The same holds true here. HHH Motors is being held to the language of its own concurrently-signed documents. See also Basulto v. Hialeah Automotive, 141 So. 3d 1145 (Fla. 2014) (affirming trial court's finding that there were issues regarding the making of the agreement, so it was proper to deny the motion to compel). If it intended for credit buyers to be subject to the arbitration clause, then it could have said so in the RISC, but did not.

HHH Motors argues that when two or more documents are executed by the same parties "contemporaneously" in the course of the same transaction

concerning the same subject, they should be read and construed together. See, e.g., Quix Snaxx, Inc. v. Sorensen, 710 So. 2d 152, 153 (Fla. 3d DCA 1998) ("Documents executed by the same parties, on or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract. Where a writing expressly refers to and sufficiently describes another document, the other document, or so much of it as is referred to, is to be interpreted as part of the writing."). While this is true, we find no legal error in the trial court's conclusion that the RISC and its merger clause operated to negate the arbitration clause in the RPA. The FAA thereby does not apply because no valid agreement to arbitrate exists.

In its motion for rehearing and written opinion, HHH Motors claims that our disposition of this case conflicts with the Fourth District's decision in Morse Operations, Inc. v. Sonar Radio Corp., 449 So. 2d 1002 (Fla. 4th DCA 1984). That case, however, is factually different because—unlike the present case—the financing agreement at issue in Morse Operations did not have a merger clause. The absence of a merger clause justified a different result, there being "no support in the record for the trial court's conclusion that the financing agreement superseded the underlying contract for this transaction." Id. at 1003. Though we find no conflict and do not certify a question of great public importance, we

8

provide this opinion to explain our reasoning, which may be beneficial in the development of this area of the law.

In conclusion, the trial court properly denied the motion to compel arbitration.

AFFIRMED.

THOMAS, MARSTILLER, and MAKAR, JJ., CONCUR.