BLACK, Judge. Marlinda Lowe challenges the circuit court’s order compelling Ms. Lowe to arbitrate her claims against Nissan of Brandon, Inc., d/b/a Autonation Nissan Bran-, don. We .affirm; we write to explain our reasoning and to certify conflict with existing cases addressing similar issues. I. Facts As relevant to this appeal, Ms. Lowe executed three separate documents when she purchased her vehicle from Nissan of Brandon: a Retail Purchase Agreement (Purchase Agreement), a Retail Installment Sale Contract (Installment Contract), and an Arbitration Agreement. Her complaint below was filed as a class action; she alleged, in pertinent part, that Nissan’s inclusion of $98.75 in the purchase price of the vehicle—itemized on the Purchase Agreement as a “Tag Agency/Electronic Filing Fee” (Fee)—violates' Florida’s Deceptive and Unfair Trade Practices Act (FDUTPA) and that the Fee constitutes unjust enrichment. The Purchase Agreement included a specific line-item charge for the Fee, and Ms. Lowe alleged that the Installment Contract included the Fee in the line-item “Cash Price” for the vehicle. Ms. Lowe’s claims are solely based upon the $98.75 Fee, The Purchase Agreement provides that “Agreement" means the Purchase Agreement together with “any documents, incorporated into this Agreement by reference, whether such reference is made in the Agreement or the document itself.” It also provides, in paragraph ten, that “[t]he front and back of this Agreement and any documents incorporated herein by reference comprise the entire agreement .affecting this sale. You agree to sign any and all documents necessary to complete the terms of this sale.” (Emphasis added.) Further, paragraph ten expressly .incorporates the Arbitration Agreement: “If you have executed an Arbitration Agreement in conjunction with this Agreement such Arbitration Agreement shall be incorporat-. ed herein by reference and made a part of this Agreement.” Paragraph fifteen of the Purchase Agreement states that the Agreement “shall survive the consummation of your purchase of the vehicle.” Paragraph sixteen provides that the Purchase Agreement is not binding on Nissan until “accepted by [Nissan’s] authorized manager, and if a credit purchase (1) appropriate financing disclosures are made and (2) a retail installment contract and purchase money security agreement is executed by you and [Nissan].” Paragraph sixteen further provides: “If this Agreement is part of a credit purchase, this offer is only an offer to purchase the vehicle .... A credit purchase is subject to credit approval of a third party financing institution and acceptance of the retail installment contract by a financing institution.” Notwithstanding paragraph ten and its incorporation of the Arbitration Agreement, paragraph eighteen of the Purchase Agreement provides: The sole and exclusive venue for any dispute or litigation arising under or concerning this Agreement shall be the courts located in and for the county in which [Nissan] is located, and the parties irrevocably consent to the jurisdiction óf said courts. Any and all arbitration proceedings shall also take place in the county where [Nissan] is located, unless agreed otherwise by the parties. ... In the event of any dispute or litigation arising under or concerning this Agreement, the prevailing party shall be entitled to recover its costs and expenses including court costs and reasonable attorney’s fees. Finally, paragraph nineteen of the Purchase Agreement provides that if the “sale of the vehicle described in this Agreement is conditioned upon an agreement by a third party financing institution (‘finance institution’) to purchase the retail installment contract entered into between you and [Nissan] (‘contract’) and if [Nissan] cannot sell the contract to a finance institution within a reasonable: time period ... [Nissan] may ... cancel the contract.” The pertinent'terms of the Installment Contract include that the “Seller-Creditor” is Nissan and the merger clause: “This contract contains the entire agreement between you and [Nissan]' relating to this contract. Any change to this contract must be in writing and [Nissan] must 'sign it.” (Emphasis added.) The Installment Contract also provides that “if [Nissan] is unable to assign this contract within [the time period stated to assign the contract] to any one of the financial institutions with whom [Nissan] regularly does business under an assignment acceptable to [Nissan], [Nissan] may cancel this contract.” The third pertinent document executed by Ms. Lowe was the Arbitration Agreement. By its. terms, the Arbitration Agreement applies to “customers” who purchase a vehicle. It defines “customer/dealership dealings” as “reviewing, negotiation or executing any documents or agreement during the course of interactions with the dealership.” The Arbitration. Agreement also provides that “arbitration will be the sole method of resolving any elaim, dispute, or controversy (collectively, ‘claims) that either party has arising from Customer/Dealership Dealings.” It then presents five groupings of' claims to which arbitration applies. Finally, ' the Arbitration Agreement states that it is “entered into contemporaneously' with your Retail Installment Sale Contract.” ■ Upon being served with Ms. Lowe’s complaint, Nissan filed á motion to compel arbitration and to stay, the case, contending that the Arbitration Agreement controlled Ms. Lowe’s claims. The court held a hearing and ultimately entered an order granting the motion to compel arbitration and staying the court case. The circuit court found that “agreements and documents signed at or near the same time and as part of the same transaction should be read and construed together,” citing Phoenix Motor Co. v. Desert Diamond Players Club, Inc., 144 So.3d 694 (Fla. 4th DCA 2014), and Collins v. Citrus National Bank, 641 So.2d 458 (Fla. 5th DCA 1994). The court also cited Kendall Imports, LLC v. Diaz, 215 So.3d 95 (Fla. 3d DCA 2017), which held, in part, that the alleged conflicts between provisions in two documents signed as part of a vehicle'purchase could be reconciled. However, the court did not provide a finding attendant to the Kendall Imports citation, and we can only presume it is cited for the reconciliation holding. As she. did, below, Ms. Lowe contends that the merger clause in the Installment Contract necessitates that the Installment Contract is the controlling document and that because the Installment Contract does not reference arbitration or incorporate any document by reference, there is no agreement to arbitrate her claims. II. Analysis “[T]he existence of a valid agreement to arbitrate is a question of law, [and] we review the trial court’s determination de novo.” Avatar Props., Inc. v. Greetham, 27 So.3d 764, 766 (Fla. 2d DCA 2010). Absent a valid written agreement to arbitrate, no party may be forced to arbitrate a. claim. Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla. 1999). At issue here is whether there was an agreement to arbitrate a dispute arising from the sale price of the vehicle. Ms. Lowe contends that two cases are directly on point and require reversal: HHH Motors, LLP v. Holt, 152 So.3d 745 (Fla. 1st DCA 2014), and Duval Motors Co. v. Rogers, 73 So.3d 261 (Fla. 1st DCA 2011). Both cases involve vehicle purchases and multiple, contemporaneously executed documents; however, HHH Motors and Duval Motors have either facts distinguishing them from this case or no discussion of facts critical to resolution of this ease. In HHH Motors, the retail purchase agreement contained an arbitration provision as well as a clause stating that the purchaser agreed to execute all additional contracts and any retail installment sales contract required. 152 So.3d at 746. The retail installment sales contract did not contain an arbitration clause but did have a merger clause identical to ours. Id. at 746-47. There was no dispute that the purchasers signed the retail purchase agreement beforé they executed' the retail installment sales contract; there was likewise' no dispute that the documents were executed contemporaneously as part of the same transaction. In. that regard, the HHH Motors court noted that the retail purchase agreement “would have been binding but for the execution of the [retail installment sales contract], which was entered concurrently.” Id. at 748. However, the court concluded that “HHH motors [was] being held to the language of its own concurrently-signed documents. If it intended for credit buyers to be subject to the arbitration clause, then it could have said so in the [retail installment sales contract], but it did not.” Id. (citation omitted). And while it recognized that when documents are executed contemporaneously in the same transaction and concerning the same subject, “they should be read and construed together,” the court found “no legal error in the trial court’s conclusion that the [retail installment sales contract] and its merger clause operated to negate the arbitration clause in the [retail purchase agreement].” Id. at 748-49. The HHH Motors court held that the merger clause of the retail installment sales contract precluded consideration of the retail, purchase agreement and that as a result there was no valid agreement to arbitrate. Id. Importantly, the claims against HHH Motors were for violations of FDUTPA “relating to electronic titling/registration filing fees that HHH Motors charge[d] its customers.” Id. at 747. However, the court did not discuss whether or how the claims, at issue might determine whether there was an agreement to arbitrate those claims. Ms. Lowe raises FDUTPA claims seemingly identical to those raised in HHH Motors; her claims rest on the $98.75 Fee charged by Nissan which is only identified in the Purchase Agreement. In Duval Motors, the retail buyer’s order contained the same conditional language regarding the retail installment sales contract that our Purchase Agreement contains. 73 So.3d at 264. The retail installment sales contract ■ contained the identical merger clause at issue in our case and did not reference arbitration. Id. at 263. Further, the retail installment sales contract in Duval Motors identified other pertinent financing information regarding the purchase, including the down payment, total sale price, and amount financed. Id. That financing information was particularly relevant because the claims raised by the purchaser in Duval Motors arose from the seller’s demand of an additional down payment. Id. at 264. The trial court denied the motion to compel arbitration and the Duval Motors court agreed “[biased on the merger clause.” Id. The Duval Motors court reiterated the general rule that “evidence outside the contract language, which is known as parol evidence, may be considered only when the contract language contains a latent ambiguity.” Id. at 265. It further stated that “[t]he purpose of a merger clause is ‘to affirm the parties’ intent to have the parol evidence rule applied to their contracts.’ ” Id. (quoting Centennial Mortg., Inc. v. SG/SC Ltd., 772 So.2d 564, 564 (Fla. 1st DCA 2000)). Applied to the facts of the Duval Motors case, the court stated that it was “immaterial whether any prior representations sought to be excluded [were] oral or written; anything that [did] not constitute part of ‘this contract’ [as used in the merger clause of the retail installment sales contract] is not part of the parties’ agreement related to the contract.” Id at 266. That is, “whether the [retail buyer’s order] should be considered depends on whether it is part of ‘this contract’ as that phrase is used in the merger clause.” Id. The court held that it was clear “that ‘this contract’ referred] only to the [retail installment sales contract]. By its title, ‘Retail Installment Sale Contract,’ [it] purports to represent the parties’ contract. More importantly, the [retail installment sales contract] does not refer to any other document as part of the contract.” Id. The Duval Motors court then determined that the retail buyer’s order was not a contract because it “referred] to itself as ‘this order’ throughout the document.” Id Finally, the court found no merit in the argument that the retail installment sales contract was not a fully integrated document because it did not contain all of the essential terms of the agreement. Id. Disagreeing with the seller’s argument, the Duval Motors court concluded that the items not listed in the retail installment sales contract but listed in the retail buyer’s order were either included in the retail installment sales contract’s figures or not essential because they were not required “to show that there was an agreement by the buyers to purchase the vehicle and an agreement by the seller to deliver the vehicle.” Id. The Duval Motors court went on to conclude that while documents executed concurrently—in the course of one transaction and concerning the same subject matter—should be read and construed together, there were no Florida cases applying that principle when one. of the documents; contained a merger clause. Id. at 267 (distinguishing. Dodge City, Inc. v. Byrne, 693 So.2d 1033 (Fla. 2d DCA 1997), for its lack of information as to the existence of a merger clause). Ms. Lowe relies on the HHH Motors and Duval Motors cases for their holdings based on the retail installment sales contracts’ merger clauses. Neither HHH Motors nor Duval Motors- indicates that .the respective purchase agreement also contained a merger clause nor that the purchase agreement was otherwise only an offer to purchase until the retail installment sales contract was executed, at which time the purchase agreement would become a binding contract. Further, neither HHH Motors nor Duval Motors indicates that the respective purchase agreement included an' incorporation by reference provision. Duval Motors does, however, state that the purchase was conditioned on subsequent purchase of the retail installment sales contract by a financing institution. 73 So.3d at 264. Because both the Purchase Agreement and the Installment Contract in this case identify as contracts and contain merger provisions, but only one of them incorporates the Arbitration Agreement, we must determine which of the two documents is the operative contract. The general contract principle regarding construing contemporaneously executed documents together has been reiterated in many cases. See, e.g., Dodge City, 693 So.2d at 1035; Phoenix Motor Co., 144 So.3d at 696 (quoting Collins, 641 So,2d at 459). “But if the parties execute ‘two separate contracts and only one contract contains an arbitration clause, the parties cannot be compelled to arbitrate-disputes arising from the contract that does not call for arbitration.’” Phoenix Motor Co., 144 So.3d at 696 (quoting Lee v. All Fla. Constr. Co., 662 So.2d 365, 366 (Fla. 3d DCA 1995)). The exception is where the contract with the arbitration clause incorporates by reference the contract which does not contain an arbitration clause, such that the latter could be “interpreted as part of the [former] contract.” Id. at 697 (citing Affinity Internet, Inc, v. Consol. Credit Counseling Servs., Inc., -920 So.2d 1286, 1288-89 (Fla. 4th DCA 2006)). To incorporate by reference a collateral ■document, the incorporating document must (1) specifically provide “ ‘that it is subject to the incorporated [collateral] document’ ” and (2) -the collateral document to be incorporated must be “ ‘sufficiently described or referred to in the incorporating agreement’” so that the intent of the parties may be ascertained, Kantner v. Boutin, 624 So.2d 779, 781 (Fla. 4th DCA 1993) (quoting Hurwitz v. C.G.J. Corp., 168 So.2d 84, 87 (Fla. 3d DCA 1964)). The [s]upreme [c]ourt set forth the second requirement for incorporation by reference in OBS Co. v. Pace Construction Corp., 558 So.2d 404, 406 (Fla. 1990): “It is a generally accepted rule of contract law that, where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to'be interpreted as part of the writing.” BGT Grp., Inc. ,v. Tradewinds Engine Servs., LLC, 62 So.3d 1192, 1194 (Fla. 4th DCA 2011) (first alteration in original); cf. Jenkins v, Eckerd Corp,, 913 So.2d 43, 51 (Fla. 1st DCA 2006) (“The contract must contain more than a mere reference to the collateral document, but it need not state that it is ‘subject to’ the provisions of the collateral document to incorporate its terms. It is sufficient if the general language of the incorporating clause reveals an intent to be . bound by the terms of the collateral document.” (quoting Mgmt. Comput. Controls, Inc, v. Charles Perry Constr., Inc., 743 So.2d 627, 631 (Fla. 1st DCA 1999))). In our case, although there is no indication of the order in which the documents were executed, there is no dispute that the documents were executed contemporaneously. And given the express language of the documents and the fact that Ms. Lowe purchased the vehicle through credit, the Purchase Agreement was only an offer to purchase until she executed the Installment Contract;. further, the purchase was subject to the condition that the Installment Contract be accepted by a financing institution. The Installment Contract’s execution, was a condition precedent to the formation of the Purchase Agreement. The Installment Contract does not reference arbitration or the Purchase Agreement;. nor does it include an incorporation by reference clause or othei’wise indicate that other documents may be incorporated into the Installment Contract. Thus, upon execution of the Installment Contract by both Ms. Lowe and Nissan and acceptance of the Installment Contract by a financing institution, the Purchase Agreement became an agreement to purchase no longer "subject to any conditions. The Purchase Agreement is the operative document. That the Installment Contract contained a merger clause is not determinative; the law remains that “the existence of a merger clause does not per se establish that the integration of the agreement is total.” Duval Motors, 73 So.3d at 265 (quoting Jenkins, 913 So.2d at 53). Where, as here, the Purchase Agreement merger clause states that the Purchase Agreement “comprise[s] the entire agreement affecting this sale,” the Purchase Agreement is the operative document governing the entire “sale” or transaction. The Purchase Agreement specifically incorporates the Arbitration Agreement.[1] Further, the merger clause of the Installment Contract at issue here mandates that the Installment Contract controls “this contract”—the financing terms and conditions contract. Cf. HHH Motors, 152 So.3d at 748; Duval Motors, 73 So.3d at 266. And a merger clause in one document contemporaneously executed with others does not necessarily preclude actions not' contemplated by that document. Michael Anthony Co. v. Palm Springs Townhomes, 174 So.3d 428, 433 (Fla. 4th DCA 2015), review denied, No. SC15-1831, 2016 WL 375006 (Fla. Jan. 29, 2016); see also Hahamovitch v. Delray Prop. Invs., Inc., 165 So.3d 676, 678 (Fla. 4th DCA 2015) (“As to' the first claim, the merger clause would not bar a cause of action for fraud, and in this case the fraud involved the closing of the property and not the subsequent participation interests to which.the merger clause applied”). “The test for determining arbitrability of a particular claim, under a broad arbitration provision is whether a ‘significant relationship’ exists between the claim and the agreement containing the arbitration clause, regardless of the legal label, attached to the dispute.” Murphy v. Courtesy Ford, LLC, 944 So.2d. 1131, 1133 (Fla. 3d DCA 2006) (quoting Seifert, 750 So.2d at 637-38). Ms.. Lowe specifically challenges part of the sale price of the vehicle. Regardless of whether she financed the purchase or paid cash, the Fee she is challenging remains the same. And while Ms. Lowe claims that the Fee was incorporated into the sale price of the vehicle as listed in the Installment Contract, without the Purchase Agreement she cannot establish the necessary facts to proceed on her claims. But see HHH Motors, 152 So.3d at 748-49. The Purchase Agreement contains the essential terms of the contract for the FDUTPA claim Ms. Lowe raises. See Murphy, 944 So.2d at 1133 (“[T]he arbitration clause in the buyer’s purchase order applies to [the] claim under the FDUTPA.”); Ritter v. Grady Auto. Grp., Inc., 973 So.2d 1058, 1062 (Ala. 2007); cf. Duval Motors, 73 So.3d at 266 (“[T]he only item on Appellant’s list that is not included in the [retail installment sales contract] is the ‘cost of a vehicle maintenance plan.’ However, this item is not an essential term, as such a plan is not required to show that there was an agreement by the buyers to purchase the vehicle and an agreement by the . seller to deliver the vehicle.” (footnote omitted)). Ms. Lowe can establish both’ the explanation for the Fee and the Fee amount only through the Purchase Agreement. The Purchase Agreement contains the essential term for purposes of the claims raised. Thus, given the terms of the Purchase Agreement and the Installment Contract and the claims raised by Ms. Lowe, the controlling document is the Purchase Agreement. The merger clause in the Installment Contract applies to financing claims not to claims which rest upon terms in the Purchase Agreement. The Purchase Agreement and its incorporation of the Arbitration Agreement control. To the extent that the First District’s decisions in HHH Motors and Duval Motors conflict with our conclusion, we certify conflict with those decisions. Affirmed; conflict certified. NORTHCUTT and SALARIO, JJ., Concur. . Neither party has otherwise contested the language of the Purchase Agreement.